GIFFEN, Appellant, v. TIGERTON LUMBER COMPANY, Respondent.

*January 5—February 2, 1965.*

330

[1] Simple accounting was set at thirty-five hours ($10 per hour) and complex accounting at twenty-one hours ($25 per hour).

For the appellant there were briefs and oral argument by *Wilbur A. Giffen* of Chicago, Illinois, *pro se.*

For the respondent there was a brief and oral argument by *O. Strossenreuther* of Shawano.

HEFFERNAN, J.

### A. *Reasonable Attorney Fees.*

Because this is an appeal from a trial court's finding of reasonable attorney fees, we are not bound by the great-weight-and-clear-preponderance-of-the-evidence test. *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. (2d) 479, 111 N. W. (2d) 419. A lower court conclusion of this type is subject to our determination of what is reasonable because we have firsthand knowledge of the value of legal services.

The company, relying on *Conway v. Sauk County* (1963), 19 Wis. (2d) 599, 605, 120 N. W. (2d) 671, contends that the proper test is that the supreme court cannot reverse the trial court unless its allowance of fees was clearly unreasonable. But there the counsel was appointed by the trial court to represent an indigent defendant and the trial took place before the same tribunal that made the subsequent review of legal fees. The "clearly unreasonable" test does not bind this court on the review of an independent finding of fact as was done here, since the prior proceedings were not before the trial judge who later determined the fees which are questioned here.

The trial court found that twenty-one hours was adequate for study and research. Giffen contends that this is too low because there are few decisions on the "Lifo" concept of tax law that govern the adjudication in the field. Because of this, he argues, he was called upon to employ his imagination and resourcefulness in search for persuasive arguments and material. For example, on the problem of whether the average cost or specie cost had to be used in determining the

base cost of the remaining inventory, Giffen testified that he checked all of the regulations back to 1917 to show that average cost was used. He also testified that he had to search "Lifo" decisions from other industries to prove that the average cost was used because there were no decisions in the lumber field.

We concur with the trial judge. Giffen was a tax specialist. His hourly charge of $25 was agreed upon by stipulation in the trial court. Even though he cannot be expected to be conversant with all aspects of the complicated field of federal tax law, he should have accumulated enough background law to be able to complete his research for this problem and study in twenty-one hours. By arguing that very few cases were decided in the specific area of "Lifo" inventories, Giffen proves too much. His past experience and general tax law knowledge should have made him well-qualified to argue effectively from these cases without a review of general tax law. A certified public accountant and lawyer, Mr. Nelson, testified that two to three days would be sufficient to research and study all of the cases.

We have considered the factors listed in *Touchett, supra,* at page 488, and conclude that twenty-one hours represents a reasonable hourly figure.

Giffen further contends that the finding of 16¼ hours was not adequate to prepare for conference. Giffen appeared at three conferences. The one held on January 10, 1958, was of no significance because the government's technical man was not present. On January 22, 1958, the parties reached agreement after a full day's session. Giffen also was present on March 26, 1958, the third meeting, to check settlement figures and arrange for final disposition of the matter. Giffen appeared in court on one occasion to move for a continuance, which was unopposed and granted. The hourly figure of 16¼ hours represents the time which would be reasonably adequate to prepare for the conferences.

In so finding, we have not overlooked the substantial achievement of Giffen. After all, nothing was accomplished until Giffen entered the negotiations. Furthermore, the tax deficiency was greatly reduced. The accountants who testified in the court below are, however, in serious dispute of the reality of a savings from the reduction in the deficiency. The saving would appear to be lost if the company allows the inventory to dwindle or if the company is liquidated. Since neither of these is seriously contemplated, the company has, for all practical purposes, accomplished the savings alleged by Giffen. In any event, the company has the use of the money until the day of the tax reckoning. But the amount saved is only one of the factors that should be considered. Giffen may well have spent the number of hours that he claims here, but he has apparently labored inordinately on a matter that could well have been disposed of, by an expert, in less time.

## B.  *Interest.*

The trial court, after determining the reasonable value of legal services, held that the company should pay Giffen interest on the amount thirty days after the date of demand. The court found that the claim for legal services was capable of liquidation or ascertainment and that the company could have done several things (including a reasonable tender) to stop the interest but elected not to do so.

Interest is due on demand if the amount as claimed is fixed or determined or readily determinable. *California Wine Asso. v. Wisconsin Liquor Co.* (1963), 20 Wis. (2d) 110, 121 N. W. (2d) 308.

The decision of *Laycock v. Parker* (1899), 103 Wis. 161, 186, 79 N. W. 327, makes an extensive analysis of the problem of allowing interest on claims which are readily determinable, arriving at the following conclusion :

"The true principle, which is based on the sense of justice in the business community and on our statute, is that he who retains money which he ought to pay to another should be charged interest upon it. The difficulty is that it cannot well be said one ought to pay money, unless he can ascertain how much he ought to pay with reasonable exactness. Mere difference of opinion as to amount is, however, no more a reason to excuse him from interest than difference of opinion whether he legally ought to pay at all, which has never been held an excuse. . . . So, if there be a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes, he should equally be held responsible for making such application correctly and liable for interest if he does not."

The company admitted that it owed Giffen something, and it should have tendered an amount that it deemed reasonable. Such action would have stopped the running of interest to the extent of the tender. However, if the tender were restricted in the sense that it could only be accepted as a payment in full, it would not preclude an award of interest on the entire sum found to be owing, assuming such sum was greater than the tender. We, therefore, affirm the action of the trial court in granting Giffen the interest of the sum it found to be owing.

*By the Court.*—Judgment affirmed. Costs are not to be taxed to either party.