Bonnie J. NELSON and David Nelson, Plaintiffs-Appellants-Petitioners,

v.

TRAVELERS INSURANCE COMPANY, Nicholas Behling, d/b/a Behlings Sewage Disposal, and Lawrence Borchardt, Defendants-Respondents.

Supreme Court

*No. 80–273. Argued April 29, 1981.—Decided June 2, 1981.*

(Also reported in 306 N.W.2d 71.)

For the petitioners there were briefs (in court of appeals) by *Kathleen J. Beck* and *Thompson & Coates, Ltd.*, of Racine, and oral argument by *Ms. Beck.*

For the respondents there was a brief (in court of appeals) by *Robert D. Sullivan* and *Riordan, Crivello, Sullivan & Carlson* of Milwaukee, and oral argument by *Robert D. Sullivan.*

WILLIAM G. CALLOW, J.   This is a review of a decision of the court of appeals affirming a judgment of the circuit court for Milwaukee county, the Honorable Harold B. Jackson, Jr., presiding.  The sole issue before this court is whether under sec. 814.04(4), Stats. 1977,[1] when a personal injury action results in a jury verdict in favor of the plaintiff, but upon appeal the liability portion of the verdict is set aside and those issues, including a question of the plaintiff's contributory negligence, are retried, again resulting in a verdict for the plaintiff, interest on the damage award should be paid from the date of the first verdict (when the damages were determined) or the second (when the liability was determined).  We conclude that in this case the interest should be paid

---

[1] Sec. 814.04(4), Stats. 1977, provides:

"814.04   **Items of costs.**   Except as provided in s. 814.025, when allowed costs shall be as follows:

". . . .

"(4) INTEREST ON VERDICT.   When the judgment is for the recovery of money, interest at the rate of 7% per annum from the time of verdict, decision or report until judgment is entered shall be computed by the clerk and added to the costs."

from the date of the first verdict, and we therefore reverse the court of appeals.

Because this is not the first time these parties have appeared before us, *see: Nelson v. Travelers Ins. Co.*, 80 Wis.2d 272, 259 N.W.2d 48 (1977), the facts giving rise to the plaintiffs' original claim, amply set forth in the above-cited opinion, need not be repeated here. For purposes of this review, it is sufficient to recite that the plaintiff and her husband brought suit against the defendants for injuries Mrs. Nelson received in an automobile accident. The action was tried to a jury which, on December 23, 1974, returned a verdict in favor of the plaintiffs, finding Mrs. Nelson 25 percent negligent and the defendants 75 percent negligent, and determining the damages to be $21,500[2] for Mrs. Nelson and $4,150 for her husband. After reduction of the damage amounts to reflect the jury's allocation of causal negligence and then addition of costs and disbursements, judgment was entered on the verdict on August 8, 1975.

From this judgment Travelers appealed, and this court, finding error in the proceedings below, reversed and ordered a new trial on the liability issues only. *Nelson v. Travelers Ins. Co., supra* at 285. Upon retrial of the liability issues to a jury, a second verdict was returned on August 24, 1979, again in favor of the plaintiffs, but this time finding Mrs. Nelson 20 percent negligent and the defendants 80 percent negligent. In a motion after verdict the plaintiffs, on September 6, 1979, requested judgment upon both the December 23, 1974, verdict and the August 24, 1979, verdict, together with costs and interest on the net amount of damages, at the rate of 7 percent, from the date of the first verdict until the

---

[2] Although it is not in the record before us, our calculations reveal that the trial court determined the property damage to be $1,018, for a total damage figure of $22,518 for Mrs. Nelson.

date of entry of the judgment sought in the motion. The question of the date from which interest was payable was briefed and argued, and on November 27, 1979, the trial court ruled that the plaintiffs were entitled to interest on the net amount awarded to the plaintiffs from the date of the second verdict. Judgment was entered accordingly on January 21, 1980. From this judgment the plaintiffs appealed.

The essence of the Nelsons' claim in this case is that under sec. 814.04(4), Stats. 1977, they are entitled to interest upon the net damage award from the date of the 1974 verdict until the entry of judgment after the 1979 verdict. In support of their claim to interest dating from the earlier verdict, they cite four cases: *Zeidler v. Goelzer*, 191 Wis. 378, 211 N.W. 140 (1926); *Fehrman v. Smirl*, 25 Wis.2d 645, 131 N.W.2d 314 (1964); *Rasmussen v. Milwaukee Electric Ry. & Transport Co.*, 261 Wis. 579, 53 N.W.2d 442 (1952); and *Moldenhauer v. Faschingbauer*, 33 Wis.2d 617, 148 N.W.2d 112 (1967).

In *Zeidler* the plaintiff was injured when the toboggan on which she was riding was struck by a car driven by the defendant Elton Goelzer, a minor. A jury found Goelzer 100 percent negligent and assessed the damages at $2,500. An appeal was taken on the issue of the defendant's father's liability under the family purpose doctrine. This court rejected the family purpose doctrine and remanded the case for a new trial on the issue of the father's liability under the theory of *respondeat superior. Crossett v. Goelzer*, 177 Wis. 455, 188 N.W. 627 (1922). On retrial a second verdict was returned, again in favor of the plaintiff. A second appeal was taken, and one issue therein was the propriety under then sec. 271.05, Stats. [which is substantially similar to the current sec. 814.04(4)], of allowing interest on the damage award from the date of the first verdict. After citing the text of the applicable statute we said:

"The action is one in tort; therefore the damages are not liquidated until they are determined. No question of damages was involved upon either the second trial or on the appeal from the judgment entered thereon. Naturally, under the decision on the former appeal, if the verdict had been favorable to the defendants, the jury's answer on the subject of damages would have been of no avail to the plaintiff. When, however, the jury assessed damages in the sum of $2,500 on the 18th day of March, 1921, such damages became liquidated, and under the language of the statute and its spirit, interest must be computed from that date. *First Wis. Trust Co. v. Schmidt,* 173 Wis. 477, 180 N.W. 832." 191 Wis. at 389.

*Fehrman, supra,* was another two-trial case. The first trial resulted in a verdict in favor of the defendant, although the jury did assess the plaintiff's damages. On appeal this court ordered a new trial on the liability issue which resulted in a second jury verdict, this time in favor of the plaintiff. A second appeal followed in which one of the issues raised was the allowance of interest on the amount of the damage award from the date of the first verdict, even though that verdict had resulted in a finding of no liability for the defendant. Once again we quoted the applicable statute and cited the *Zeidler* case, adding:

". . . In the *Zeidler Case,* the verdict of the first trial was in favor of the plaintiff; nevertheless, we agree with the trial judge that this distinction is not controlling.

"The damages were liquidated after the first trial, and it was theoretically possible for a tender to have been made. *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 395, 94 N.W. (2d) 697. We recognize that a defendant, victorious at the first trial, would scarcely contemplate a tender of damages; however, it does not follow that upon an ultimate loss of the case such defendant is protected from the burden of paying interest on the previously ascertained damages. This is especially true when, as here, no question of damages was involved upon the second trial." 25 Wis.2d at 659.

Both *Rasmussen* and *Moldenhauer* involved situations where a damage award established by a jury verdict was reduced as excessive. In each case this court held that, where a verdict award is reduced in postverdict proceedings, interest is properly allowed from the date of the verdict, not the date of the reduction.

On the basis of these cases, particularly *Zeidler* and *Fehrman,* the petitioners argue that the damages were liquidated at the time of the first verdict, and as the second trial did not involve the retrial of any damage issues, interest is payable under sec. 814.04(4), Stats. 1977, from the first verdict.

The respondents point out that in neither *Zeidler* nor *Fehrman* was there an issue as to the plaintiff's contributory negligence, so the defendant's exposure in each case was an "all or nothing" proposition. In this case, however, it is argued that there was an issue of Mrs. Nelson's contributory negligence at the second trial, and as a result the amount the defendant might actually owe the plaintiff could not be determined until the liability verdict, with its causal negligence allocation, was reached. Because of the unresolved allocation issue, the respondents claim the damages were not liquidated until the second verdict.

In support of this argument, the respondents rely upon *City of Franklin v. Badger Ford Truck Sales,* 58 Wis.2d 641, 207 N.W.2d 866 (1973), and *Wyandotte Chemicals Corp. v. Royal Electric Mfg.,* 66 Wis.2d 577, 225 N.W.2d 648 (1975). In *City of Franklin* the city sued the manufacturer and seller of a fire truck for damages caused by the failure of a defective truck wheel. Although the jury was asked to allocate causal fault as between the city's operation of the truck and the defective condition of the wheel, it did not make any allocation among the three individual defendants. Because of this failure, we remand-

ed the case for a new trial in order to make that determination, and in the concluding paragraph of our opinion we stated:

"From the above reasoning and conclusions, it necessarily follows that: . . . (2) The trial court decision disallowing the plaintiff's claim to interest from the date of filing the complaint is affirmed, since the amount of damages payable by individual defendants was not fixed or determinable." 58 Wis.2d at 657.

*Wyandotte* involved a suit for property damage against three defendants. The damage figure was stipulated on November 16, 1967, and a verdict in favor of the plaintiff, allocating causal negligence among the defendants, was returned on December 8, 1972. Judgment was entered on April 9, 1973, and amended on May 7, 1973, to reflect the denial of the plaintiff's claim to preverdict interest dating from the date of the stipulation. After an exhaustive analysis of the law relative to prejudgment interest, we concluded that under our cases, even where a damage figure was determinable, interest would not be proper "where *some other factor* prevented the withholding party from determining the amount which should be tendered in order to avoid preverdict interest." 66 Wis. 2d at 584. In affirming the trial court's denial of the plaintiff's claim for preverdict interest, we stated:

". . . While a reasonable argument is made by the plaintiffs that *Franklin* provides an inequitable rule in that it differentiates between a case where the plaintiff sues multiple parties rather than just a single party, on the other hand, it must be recognized that the plaintiff exercises initial control over the number of parties against whom suit is brought, thus no great inequity results. Moreover, it is only by acceptance of the view that injured parties' rights to full compensation are of paramount consideration that the result argued for by the plaintiffs can be justified. However, this court has never subscribed to that belief." 66 Wis.2d at 586–87.

It is evident from the foregoing that the resolution of this case cannot be achieved by the simple application of the rule in any previous case. This case resembles *Goelzer* and *Fehrman* in that there are only two parties and there were two trials, at the first of which a damage figure was fixed; yet it resembles *Franklin* and *Wyandotte* in that an unresolved allocation question (albeit between plaintiff and defendant, rather than multiple defendants) prevents the precise determination of the amount the defendant must pay.

The court of appeals, relying upon *City of Franklin, Wyandotte,* and *City of Merrill v. Wenzel Brothers, Inc.,* 88 Wis.2d 676, 277 N.W.2d 799 (1979), concluded that the unresolved question of the allocation of causal negligence between the plaintiffs and the defendants constituted "some other factor" which prevented the determination of the amount the defendant would have to pay, and thus affirmed the judgment of the trial court. *Nelson v. Travelers Ins. Co.,* 99 Wis.2d 341, 299 N.W.2d 257 (Ct. App. 1980). We have serious misgivings about the application of the "some other factor" rule to sec. 814.04 (4), Stats. 1977, particularly where, as here, the factor is not related to the formulation of the damage figure itself but is instead related to the degree of the parties' culpability.

As early as *Laycock v. Parker,* 103 Wis. 161, 178, 79 N.W. 327 (1899), this court observed:

"The question of interest is one much more often passed upon than carefully considered by courts. It is usually presented only incidentally to much more important issues, and often decided one way or the other at the close of exhaustive investigation of the other questions, and with the perhaps unconscious feeling that it is not of sufficient magnitude to justify further serious labor. Again, the elements involved in determining the question are many of them so elastic in their application that cases

may be rightly resolved in different ways without the distinction being apparent from the statement of them."

With some exceptions, these observations could be made with equal pertinence today, and a prime example of this phenomenon is the rule in the *City of Franklin* case. That part of the decision relating to preverdict interest was summary, to say the least, and was obviously incidental to other, more significant issues in the case. Nonetheless, that one sentence in *City of Franklin* became the basis for the *Wyandotte* holding, and the Wisconsin rule preventing prejudgment interest in multiple defendant cases came to fruition. *See, e.g., In Re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979,* 480 F. Supp. 1280, 1284 (N.D. Ill. 1979).

Although we are without the benefit of any extended analysis underlying the *City of Franklin* rule, its treatment in *Wyandotte* suggests that it was stated as a logical result of the application of the longstanding, basic principle that prejudgment interest cannot be awarded on an unliquidated amount or one which is not capable of determination by application of some fixed standard. In *Laycock* this court explained that initially interest was awarded to punish one who failed to pay money legally due and that the notion of interest as compensation to the creditor was not a primary consideration. Viewed from the perspective of punishment instead of compensation, the traditional liquidated-unliquidated distinction is meaningful, since it would be unreasonable to punish one for failing to pay a debt, the amount of which is not only undermined but incapable of determination. The court in *Laycock* went on to observe that, as commerce and matters of credit become more widespread, interest as an aspect of compensation for the use of another's money grew as a matter of "commercial equity," 103 Wis. at 179, leading the court to summarize:

"As would be expected, courts have varied greatly in applying these rules to individual cases; but it may be safely said that the tendency has been in favor of allowing interest rather than against it, and that the degree of certainty or ease with which the approximate amount can be ascertained has grown less and less stringent." 103 Wis. at 182–83.

In *Wyandotte* we again commented on the development of interest as compensation under the time-value theory of money, concluding that, while the idea that interest is awardable as a part of compensatory damages has been reflected in cases subsequent to *Laycock,* some vestiges of the old notion remain to protect the withholding party from liability for interest on sums which, because of their undeterminable character, cannot be tendered in payment. The result, we concluded, was the development of a compromise or "middle ground" where interest was recoverable in some cases where the amount due, while not truly liquidated, was capable of determination but not recoverable where something prevented the computation of the exact amount due. *Compare: Necedah Mfg. Corp. v. Juneau County,* 206 Wis. 316, 237 N.W. 277, 240 N.W. 405 (1932) ; *Maslow Cooperage Corp. v. Weeks Pickle Co.,* 270 Wis. 179, 70 N.W.2d 577 (1955) ; *Giffen v. Tigerton Lumber Co.,* 26 Wis.2d 327, 132 N.W.2d 572 (1965) ; *De Toro v. DI-LA-CH, Inc.,* 31 Wis.2d 29, 142 N.W.2d 192 (1966), *with Smith v. Atco Co.,* 6 Wis.2d 371, 94 N.W.2d 697 (1959) ; *Congress Bar & Restaurant v. Transamerica Ins. Co.,* 42 Wis.2d 56, 165 N.W.2d 409 (1969) ; *Luber v. Milwaukee County,* 47 Wis.2d 271, 177 N.W.2d 380 (1970) ; *Stevens Construction Corp. v. Carolina Corp.,* 63 Wis.2d 342, 217 N.W.2d 291 (1974) ; *State ex rel. Schilling & Klingler v. Baird,* 65 Wis.2d 394, 222 N.W.2d 666 (1974). Both *City of Franklin* and *Wyandotte* could probably be characterized as middle-ground decisions in that both cases involved stipulated damages, but interest

prior to the second verdict was precluded in each because questions of apportionment of liability prevented an exact calculation of the amount payable by each defendant.

We are no longer firmly convinced that only the unliquidated or unliquidable character of damages should determine whether interest is payable on the amount due. It is true that the kinds of damages associated with personal injury suits epitomize the concept of unliquidated damages, but the person injured is no less entitled to compensation because his injuries are initially in the nonpecuniary realm of pain and suffering, emotional distress, loss of society, or the loss of use of a limb or limbs, to name a few such categories. Moreover, to the extent that those injuries are ultimately compensable, the wrongdoer who must make compensation has the use of the money until payment is made (and he has such use whether he is aware of the amount due or not). Conversely, the plaintiff, who *should* have the money, does not have it and thus cannot put it to use only because, through no fault of his own, the human body is not susceptible to some sort of replacement cost or market value analysis at the time of injury, and a damage figure must, generally, await jury determination. *See, e.g., Carlton v. H. C. Price Co.*, 640 F.2d 573, 576 (5th Cir. 1981) (under Alaska law) ("the purpose of prejudgment interest is to put a plaintiff in the position he would have been in had he had his trial and recovered his judgment immediately after his injury"). The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but is simply the value of the use of the money—a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead.

In this case we need not pursue this line of reasoning to its logical conclusion since we are dealing with post-

verdict interest only, and we can look to the language of sec. 814.04(4), Stats. 1977, for guidance. That section provides that interest at the stated rate shall be payable from the date of the verdict until the date judgment is entered. As we indicated in *Goelzer* and *Fehrman,* the existence of multiple verdicts does not render the statute inapplicable, provided the final judgment rests in part upon both verdicts. We do not think the unresolved matter of the allocation of causal negligence between the plaintiff and the defendant, with its consequent effect on the apportionment of damages, should alter the application of sec. 814.04.

The statute designates the date of the verdict as the point at which interest is payable. In a personal injury case, the verdict which assesses the plaintiff's damages is significant because it converts nonmonetary concepts of personal injury into dollars. We believe it is that conversion which, under this statute, triggers the plaintiff's right to interest payments because once this figure is reached the parameters of the "debt" have been established and the case no longer involves "damages which are wholly at large." 1 Sutherland, *Law of Damages,* sec. 347, 1092 (4th ed. 1916).

Although both *City of Franklin* and *Wyandotte* are distinguishable from the instant case because they concern claims for preverdict interest, the fact that each involved stipulated damages diminishes the significance of that distinction. Rather, we believe the rationale of those cases is suspect for different reasons. A dispute as to a defendant's liability has never been recognized as a bar to the payment of interest. *Laycock,* 103 Wis. at 186, ("[m]ere difference of opinion as to amount is, however, no more a reason to excuse him from interest than difference of opinion whether he legally ought to pay at all,

which has never been held an excuse"); *Fehrman v. Smirl, supra; Wyandotte Chemical Corp. v. Royal Electric Mfg., supra; City of Merrill v. Wenzel Brothers, Inc., supra,* ("interest runs from the date the damages are liquidated or determinable regardless of the existence of legal issues regarding liability for those damages"), 88 Wis.2d at 698. The allocation of causal fault with its corresponding mathematical impact upon the dollar amount ultimately due a plaintiff is far more a question of liability than of damages, since it is related only to determining degrees of culpability and not to quantifying the value of a person's actual injuries. *See, e.g., De Toro v. DI-LA-CH, Inc.,* 31 Wis.2d at 34. It follows that the application of our contributory negligence statute[3] should not operate to the plaintiff's disadvantage in a situation where, as in this case, the damages are fixed by a prior verdict, but the adjustment for relative fault must await the determination of the liability issues in a subsequent trial. We hold that the resulting "uncertainty" in the computation of the amount is not sufficient to overcome the plaintiffs' statutory right to interest under sec. 814.-04(4), Stats. 1977, from the date of the first verdict. Accordingly, the plaintiffs are entitled to interest on the net damage award (the total damages established in the first verdict reduced by the plaintiffs' contributory negligence established in the second verdict) from the date of the first verdict.

*By the Court.*—The decision of the court of appeals is reversed.

COFFEY, J. (*dissenting*). This case involves nothing more than the application of sec. 814.04(4), Stats., which provides:

"When the judgment is for the recovery of money, interest at the rate of 7% per annum from the time of ver-

---

[3] Sec. 895.045, Stats.

dict, decision or report until judgment is entered shall be computed by the clerk and added to the costs."

The majority applies this statute so as to allow interest running from the date of the first verdict in this case, even though the amount of recovery on which the interest is allowed is determined by the second verdict, and is greater than the amount which could have been recovered under the first verdict. I think the majority has departed from our previous decisions construing the statute. However, that disagreement is not the reason for my dissent. I am disturbed by the majority's suggestion that pre-verdict interest be allowed on a claim for personal injuries. The effects of this dictum are impossible to predict, but I fear that they may be catastrophic.

In the case at bar, the second trial was had not only on the issue of negligence, but also on the issue of contributory negligence. The difference is important. The amount of recovery was not fixed by the first verdict, with the question of liability to be determined by the second. The second trial determined not only the issue of liability, but also how much the plaintiffs were to recover. Under *Zeidler v. Goelzer,* 191 Wis. 378, 211 N.W. 140 (1926), and *Fehrman v. Smirl,* 25 Wis.2d 645, 131 N.W. 2d 314 (1964), as quoted by the majority, interest runs on a verdict which has the effect of liquidating damages, even though liability is determined by a second verdict. In this case the amount of recovery was determined by the second verdict, because the apportionment of negligence, 80 percent to the defendants and 20 percent to the plaintiffs, increased the recovery over that which would have been allowed under the first verdict where negligence was apportioned 25 percent to plaintiffs and 75 percent to defendants.

Our prior cases have construed sec. 814.04, Stats., to permit the recovery of interest from the date of a verdict

which fixes the amount of recovery. A new interpretation of the statute amounts to an amendment by this court. The proper forum in which to amend the statute is the legislature. Having construed the statute, the court ought to adhere to the construction made. If the court claims the power to amend the statute as a rule of practice and procedure, case law is not the way to do it. Sec. 751.12, Stats., requires notice and hearing before a court rule amending a statute relating to pleading, practice or procedure may be adopted. The effective date for all such rules must be January 1 or July 1st. The opinion of the majority has circumvented these requirements.

The majority does not restrict its consideration to the statutory question upon which the case is decided. The majority goes out of its way to question the rationale of *City of Franklin v. Badger Ford Truck Sales,* 58 Wis.2d 641, 207 N.W.2d 866 (1973), and *Wyandotte Chemicals Corp. v. Royal Electric Mfg.,* 66 Wis.2d 577, 225 N.W.2d 648 (1975), stating the rationale is suspect. The majority states that both cases involve "middle ground decisions" illustrating a departure from the requirement of liquidated damages for pre-verdict interest, and adopting the concept that interest was recoverable in some cases where the exact amount due was capable of determination. The majority concedes that damages associated with personal injury "epitomize the concept of unliquidated damages," but places a higher value on "compensation" to the injured party than fairness to the alleged tortfeasor. The majority has not pointed to any case where pre-verdict interest has been allowed in a personal injury case. There is a very good reason why such interest should not be allowed. In a personal injury case the jury is typically asked to place a value on the damages suffered up to the time of verdict, and those which will be suffered in the future, following the verdict. If pre-ver-

dict interest were allowed in a personal injury case, based on the amount of recovery which the jury awarded in the verdict, interest would be allowed on items such as pain and suffering before they occurred. Moreover, it would not be equitable to permit interest before a verdict on the amount of a hospital bill which had not yet been paid. At the very least, the jury should be instructed that interest will be allowed going back to sometime prior to the verdict on all damages which it finds, so that the defense can argue that the damage award should be reduced by the amount of that interest.

In *Congress Bar & Restaurant v. Transamerica Ins. Co.,* 42 Wis.2d 56, 165 N.W.2d 409 (1969), the court denied pre-judgment interest on a claim for property damage, stating:

"Respondent's claim was for an amount substantially in excess of the amount finally determined to be due. To award respondent interest when it was able to establish just over half of its claim would encourage the overstatement of claims." *Id.* at 71.

Overstatement of claims in personal injury cases is already a serious matter, resulting in the trial of many cases which might have been settled if a more reasonable demand were made. The majority opinion will encourage the overstatement of claims and lead to unnecessary litigation, greatly increasing the burden of defense on insurance companies and the portion of the premium dollar which must be allocated to that purpose. Further, the allowance of pre-verdict interest in cases which come on for trial seven years after the accident occurs, and such cases are not uncommon, could add 50 percent to the amount of recovery against the insurance company. This unexpected and unjust drain on their reserves might cause many insurers now doing business in this state to cease doing business here, or might make them insolvent.

The majority opinion is wrong even if its only purpose is to force insurance companies to settle out of court so as to give plaintiffs more leverage in questionable damage claims or where damages are large but liability is in doubt. The right to defend an honestly debatable damage or liability issue should not be taken away without a much better reason. The insurance companies defend such cases in a quasi-fiduciary capacity for all, because ultimately it is the premium-paying public which bears the cost.

The sophisticated trial techniques now employed on behalf of plaintiffs in personal injury cases include interest calculations, allowances for inflation, testimony of economists projecting future loss of earnings and similar items. After taking this evidence into account, a jury is asked to return its verdict as to what amount will compensate the plaintiff for the injuries suffered. The majority now proposes to increase the verdict by awarding pre-verdict interest so as to increase the compensation paid to the plaintiff. I believe this is an invasion of the province of the jury in personal injury cases, unfairly penalizes defending insurance companies and encourages overstatement of claims.

The court of appeals held, in accordance with established case law, that interest in this matter was to run from the date of the second verdict. I would affirm the court of appeals. Moreover, I disassociate myself from the views of the majority with respect to pre-verdict interest for the reasons stated.

I am authorized to state that Mr. Chief Justice Bruce F. BEILFUSS joins in this dissent.