MANAGEMENT COMPUTER SERVICES, INC., a Wisconsin Corporation, Plaintiff-Respondent-Cross-Appellant,†

v.

HAWKINS, ASH, BAPTIE & CO., a Wisconsin Partnership, and Hawkins, Ash, Baptie, Inc., a Wisconsin Corporation, and David D. Baptie, James O. Ash, R. Roy Campbell, Robert J. Daley, Walter L. Leifeld, Larry E. Vangen, and Jack E. White, Defendants-Counter Claimants-Appellants-Cross-Respondents,†

Richard G. HAWKINS, Ellyn M. Ash, Ann M. Baptie, Elnora Baptie, Steven L. Baptie and Ruth C. Hawkins, Counter Claimants,

v.

MANAGEMENT COMPUTER SERVICES, INC., Counter Defendant-Respondent. [Case No. 97–2470]

MANAGEMENT COMPUTER SERVICES, INC., a Wisconsin Corporation, Plaintiff-Appellant,†

v.

HAWKINS, ASH, BAPTIE & CO., a Wisconsin Partnership, and Hawkins, Ash, Baptie, Inc., a Wisconsin Corporation, and David D. Baptie, James O. Ash, R. Roy Campbell, Robert J. Daley, Walter L. Leifeld, Larry E. Vangen, and Jack E. White, Defendants-Counter Claimants-Respondents,†

†Petition to review denied.

Richard G. HAWKINS, Ellyn M. Ash, Ann M. Baptie, Elnora Baptie, Steven L. Baptie and Ruth C. Hawkins, Counter Claimants,

v.

MANAGEMENT COMPUTER SERVICES, INC., a Wisconsin Corporation, Counter Defendant. [Case No. 98–1384]

Court of Appeals

*Nos. 97–2470, 98–1384. Submitted on briefs November 11, 1998.—Decided December 17, 1998.*

(Also reported in 592 N.W.2d 279.)

On behalf of the plaintiff-appellant and plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the defendants-counter claimants-appellants-cross-respondents, the cause was submitted on the briefs of *Daniel W. Hildebrand* and *Steven J. Kirschner;* on behalf of the defendants-counter claimants-respondents, the cause was submitted on the brief of *Daniel W. Hildebrand,* both of *DeWitt, Ross & Stevens* of Madison.

Before Dykman, P.J., Eich and Deininger, JJ.

DEININGER, J. These appeals arise out of protracted litigation between Management Computer Services, Inc. (MCS), a provider of computer hardware, software and services, and one of its customers, Hawkins, Ash, Baptie & Co. (HABCO), an accounting firm. A jury awarded MCS substantial damages on several claims, but the trial court granted HABCO's motion for judgment notwithstanding the verdict (JNOV) on two claims, and it reduced the amount of punitive damages awarded by the jury. A judgment was ultimately entered on the jury verdict after a retrial of punitive damages and the disposition of an appeal which reinstated several components of the original verdict. That judgment and a subsequent order staying it are now before us in this consolidated appeal and cross-appeal.

In No. 97–2470, HABCO appeals the trial court's award to MCS of postverdict, prejudgment interest, calculated at 12% from the date of the verdict to the entry of the ultimate judgment, which in this case is a period of approximately six years. HABCO contends that interest should accrue only from the time of the appellate decisions reinstating the verdict. We reject HABCO's contention, and conclude that under § 814.04(4), STATS., HABCO is liable for interest from the date of the verdict to the entry of judgment.

MCS cross-appeals the offset allowed in the judgment in favor of HABCO for its costs in the retrial of the punitive damages question. MCS contends that it should not be liable for those costs because the retrial was nullified by appellate decisions reinstating the original jury verdict. We agree, and reverse this component of the judgment.

In No. 98–1384, MCS appeals the trial court's order staying execution of the judgment and allowing HABCO to pay the contested amount of the judgment to the court, thereby tolling HABCO's liability for postjudgment interest under § 815.05(8), STATS. MCS contends that, should it prevail, it is entitled to the 12% statutory interest rather than the market rate of interest provided under the court's order. We disagree. We conclude that the trial court was within its discretion to permit HABCO to pay the contested amount to the court, and that HABCO's payment to the court terminated its liability for statutory postjudgment interest under § 815.05(8).

## BACKGROUND

MCS sued HABCO in 1989, alleging that HABCO had breached its contract with MCS by failing to make required purchases and payments, and that HABCO had improperly copied and used MCS software. The ensuing litigation has a long history, which is reported in *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.*, 196 Wis. 2d 578, 539 N.W.2d 111 ( Ct. App. 1995), *aff'd in part, rev'd in part*, 206 Wis. 2d 158, 557 N.W.2d 67 (1996). The appeals before us now involve the payment of interest on the verdict and judgment against HABCO and the assessment of certain costs against MCS. We summarize only the facts pertinent to those issues.

317

In 1991, a jury awarded MCS extensive damages: $1,520,750 for breach of contract; $65,000 for conversion of MCS software; $1,000,000 for HABCO's unjust enrichment; and $1,750,000 in punitive damages. The jury also awarded $5,140 to HABCO on a counterclaim for a breach of contract committed by MCS. On HAB CO's motion, the trial court set aside the jury's award of damages for breach of contract and for unjust enrichment, and reduced the conversion damages to $62,000. HABCO paid the $62,000 conversion damages to MCS. The trial court also reduced the punitive damages to $50,000, thus giving MCS the option of accepting the reduced award, or having a new trial on the issue of punitive damages. MCS declined the reduced amount of punitive damages. MCS did not, however, seriously pursue the issue of punitive damages at the second trial, and judgment was entered for HABCO. The trial court awarded HABCO $9,536.76 in costs for the second trial.

MCS appealed the ensuing judgment, which also served to appeal all nonfinal prior orders and rulings adverse to MCS. HABCO cross-appealed. This court reversed the trial court judgment in part, ordering the conversion damages restored to $65,000 and increasing the punitive damages allowed to $650,000. On review in the supreme court, another component of the original verdict, damages for breach of contract, was reinstated. Following remand, MCS accepted the reduced punitive damage award of $650,000, and HAB CO paid the balance of the final damage award to MCS on March 31 and April 1, 1997. The trial court determined that under § 814.04(4), STATS., MCS was entitled to 12% interest on the ultimate damage award from the time of the verdict in 1991 to the entry of judgment in 1997. Accordingly, the court awarded M

CS $1,252,212.97 in costs and disbursements, most of which represented postverdict interest on the damage award. The trial court also entered an offsetting amount in favor of HABCO for its costs in the second punitive damages trial of $9,536.76, plus interest of $5,094.98.

On HABCO's motion, the trial court stayed the execution of the judgment, on the condition that HAB CO pay the unpaid balance of the judgment to the clerk of court. The court determined that the stay would toll HABCO's liability for postjudgment interest at 12% under § 815.05(8), STATS. The court directed the clerk to deposit the proceeds in several local banks, and it was understood by the parties that whichever of them prevails on appeal will be entitled to the interest that accumulates on the deposits, at a likely rate of 5–6%. These appeals and the cross-appeal followed.

## ANALYSIS

*a. HABCO's liability for postverdict / prejudgment interest.*

■

HABCO contends that MCS is not entitled to interest on the breach of contract damages or the punitive damages from the time of the verdict in 1991 to the entry of judgment in 1997. The trial court awarded M CS interest on the damages pursuant to § 814.04(4), STATS., which provides:

> INTEREST ON VERDICT. Except as provided in [section dealing with settlement offers, not applicable on present facts], if the judgment is for the recovery of money, interest at the rate of 12% per year from the time of verdict, decision or report

until judgment is entered shall be computed by the clerk and added to the costs.

The issue before us involves interpretation of this statute, and therefore presents a question of law which we decide de novo. *See Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996).

HABCO argues that it can be liable for interest only on damages that have been conclusively determined, and that MCS's breach of contract damages and punitive damages were not conclusively determined by the 1991 jury verdict because that verdict was set aside by the trial court. The amount of these damages were conclusively determined only when the appellate courts reinstated them much later at specific amounts. Thus, according to HABCO, interest should accrue on the punitive damages award from the date of our decision, August 31, 1995 to the July 7, 1997 judgment. By the same token, in HABCO's view, interest should accrue on the breach of contract damages from the supreme court decision on December 20, 1996 to the July 7, 1997 judgment. Thus, HABCO urges us to interpret the term "decision" in § 814.04(4), STATS., to mean the appellate decisions that fixed the amount of damages to which MCS was ultimately entitled.

We acknowledge that the amount of HABCO's liability was not ultimately fixed until the appellate decisions. We are not persuaded, however, that under § 814.04(4), STATS., these decisions mark the date from which HABCO is liable for interest on the damages owed to MCS. Our interpretation of § 814.04(4) is guided by *Moldenhauer v. Faschingbauer*, 33 Wis. 2d 617, 148 N.W.2d 112 (1967), in which the supreme court considered a similar situation and determined that postverdict, prejudgment interest accrued from

the date of the original verdict.[1] In *Moldenhauer*, a jury awarded the plaintiff $43,012 in compensatory damages in a negligence action. The trial court set the verdict aside and ordered a new trial on all issues.[2] On appeal, the supreme court directed the trial court to reinstate the jury verdict as to liability, but to offer the plaintiff the option of a reduced damage award or a new trial on the issue of damages. On remand, the trial court offered the plaintiff $13,012 in damages; the plaintiff appealed the amount. On the second appeal, the supreme court directed the trial court to offer the plaintiff the option of $19,012 in damages or a new trial on the issue of damages. On the second remand, the plaintiff accepted the $19,012 damages, to which the trial court added interest from the date of the original verdict. The defendant appealed the assessment of interest, and the supreme court held that the plaintiff was entitled to interest on his award of compensatory damages from the date of the jury verdict—even

---

[1] The statute at issue in *Moldenhauer v. Faschingbauer*, 33 Wis. 2d 617, 148 N.W.2d 112 (1967), was § 271.04(4), STATS., 1963, the predecessor to the current § 814.04(4), STATS. Old § 271.04(4) is identical to the current statute in all respects pertinent to this case. It provided:

> INTEREST ON VERDICT. When the judgment is for the recovery of money, interest at the legal rate from the time of verdict, decision or report until judgment is entered shall be computed by the clerk and added to the costs.

[2] We note that in *Moldenhauer*, retrial was ordered on damages, as well as on liability. Thus, we are not persuaded by HAB CO's attempt to distinguish *Nelson v. Travelers Ins. Co.*, 102 Wis. 2d 159, 306 N.W.2d 71 (1981), and *Fehrman v. Smirl*, 25 Wis. 2d 645, 131 N.W.2d 314 (1964), on the grounds that the amount of damages in *Nelson* and *Fehrman* was not contested on appeal.

though the trial court had set the verdict aside, the damage award was less than that originally determined by the jury, and the amount was fixed only after multiple appeals. We conclude that, like the plaintiff in *Moldenhauer*, MCS is entitled to interest on the damages from the date of the original 1991 verdict to the entry of judgment in 1997.

HABCO contends that *Moldenhauer* is inapplicable for two reasons. First, in *Moldenhauer*, the trial court ordered a new trial in the interests of justice, whereas here, the trial court granted JNOV. HABCO contends that a JNOV "renders the verdict a nullity . . . as if the jury had not rendered it." We do not find it significant that the trial court here granted JNOV rather than ordering a new trial as in *Moldenhauer*. HABCO is correct that a JNOV is similar to a motion for directed verdict, in the sense that "it admits the facts as found but contends that as a matter of law those facts are insufficient, though admitted, to constitute a cause of action." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 120 Wis. 2d 591, 600, 357 N.W.2d 287, 292 (Ct. App. 1984), *rev'd on other grounds*, 127 Wis. 2d 127, 377 N.W.2d 605 (1985). Nevertheless, JNOV differs from a directed verdict in that when a JNOV is reversed, a jury verdict always exists and can be reinstated. In this regard, JNOV is like the granting of a motion for a new trial: although the postverdict action of the trial court "renders the verdict a nullity," the verdict may later be reinstated and will provide the basis for judgment if the trial court's postverdict action is reversed.[3] We conclude, therefore, that when a ver-

---

[3] In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 120 Wis. 2d 591, 600, 357 N.W.2d 287, 292 (Ct. App. 1984), *rev'd on other grounds*, 127 Wis. 2d 127, 377 N.W.2d 605 (1985), we

dict is reinstated, interest under § 814.04(4), STATS., accrues from the date of the original verdict regardless of whether the trial court had set aside the verdict by granting a motion for a new trial or one for JNOV.

Second, HABCO contends that *Moldenhauer* is inapplicable because in *Moldenhauer*, the plaintiff appealed the amount of the trial court's reduction in damages, and then accepted the larger damages figure presented on remand. Here, however, MCS did not appeal the amount of the trial court's reduction in punitive damages, but instead elected a new trial and lost. HABCO cites *Wendt v. Fintch*, 235 Wis. 220, 292 N.W. 890 (1940), to support its contention that MCS's "request for a new trial extinguished the first jury's award of punitive damages." We disagree. In *Wendt*, the plaintiff prevailed at trial, and then rejected the trial court's proffered judgment for reduced damages. A new trial was ordered, and that order was affirmed on appeal. The plaintiff again prevailed, and the trial court allowed interest to run only from the date of the second verdict. The supreme court refused the plaintiff's request to award interest from the date of the first trial, because judgment was entered based on the dam-

---

held that a "motion for judgment notwithstanding the verdict brings to bear the same essential determinations as those raised by a motion for directed verdict." In *Merrill Lynch*, however, we were concerned with whether a JNOV had been properly granted, not the consequences of reversing a JNOV. A motion for a directed verdict may be granted at the close of all evidence or after a verdict is received. *See* § 805.14(4) and (5)(d), STATS. Thus, there may or may not be a jury verdict to reinstate if the trial court's granting of a directed verdict is later reversed. In short, *Merrill Lynch* does not support HABCO's assertion that the consequences of reversing a JNOV are distinguishable from the consequences of reversing an order for new trial.

ages awarded by the jury in the second trial. *See id.* at 227–28, 292 N.W.2d at 893–94. Here, although MCS rejected the trial court's offer of reduced punitive damages and elected a second trial, the result of the second trial was nullified on MCS's appeal. The amount of punitive damages that MCS ultimately received derives entirely from the award of punitive damages in the original 1991 verdict, and *Wendt* is inapposite.

MCS is thus in the same position as the plaintiff in *Moldenhauer*, with one exception: the plaintiff in *Moldenhauer* appealed the new trial order prior to the occurrence of a new trial, whereas MCS appealed the order for a new trial on punitive damages as an underpinning of the judgment which followed the retrial. *See Management Computer Servs., Inc.*, 196 Wis. 2d at 592, 539 N.W.2d at 117; RULE 809.10(4), STATS. ("An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon."). We do not find this difference significant because, in both cases, the trial court's new trial order was later reversed and the jury's verdict was partially reinstated. We conclude, therefore, that under § 814.04(4), STATS., MCS is entitled to interest from the date of the verdict on which the damages ultimately recovered are based.

HABCO also contends that the trial court's award of $1.25 million in postverdict, prejudgment interest under § 814.04(4), STATS., is an unconstitutional penalty. Grossly excessive damage awards violate the due process clause of the Fourteenth Amendment of the United States Constitution. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). The consti-

tutionality of a statute is a question of law which we review de novo. *See Hasselblad v. City of Green Bay*, 145 Wis. 2d 439, 442, 427 N.W.2d 140, 141 (Ct. App. 1988). The party challenging the constitutionality of a statute bears the burden to show its invalidity "beyond a reasonable doubt." *See State v. Dennis*, 138 Wis. 2d 99, 103, 405 N.W.2d 711, 713 (Ct. App. 1987). We conclude that HABCO has not met its burden on this claim.

█

HABCO argues that, because HABCO was under no obligation to pay MCS until the entry of judgment in 1997, the award of interest under § 814.04(4), STATS., is an unconstitutional punishment. We disagree. The principal purpose of § 814.04(4), is not to punish the defendant for nonpayment, but to compensate the plaintiff for the loss of use of the money until judgment is entered. Our supreme court has explained the purpose of § 814.04(4):

> [T]o the extent that [the plaintiff's] injuries are ultimately compensable, the wrongdoer who must make compensation has the use of the money until payment is made (and he has such use whether he is aware of the amount due or not). Conversely, the plaintiff, who should have the money, does not have it and thus cannot put it to use . . . . The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but is simply the value of the use of the money—a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead.

*Nelson v. Travelers Ins. Co.*, 102 Wis. 2d 159, 169, 306 N.W.2d 71, 76 (1981) (citation omitted). Whether HAB CO had been previously ordered to pay MCS specified

sums is irrelevant to the value of the use of the money to MCS, and it is therefore irrelevant to the calculation of interest under § 814.04(4). Once it was determined that certain damages awarded by the jury were properly due to MCS, it was entitled under the statute to be compensated for the time-value of the money it was owed from the date of the verdict forward.

We have already held that the rate of interest imposed by § 814.04(4), STATS., is constitutional. *See Zintek v. Perchik*, 163 Wis. 2d 439, 479, 471 N.W.2d 522, 538 (Ct. App. 1991) *overruled on other grounds by Steinberg v. Jensen*, 194 Wis. 2d 439, 534 N.W.2d 361 (1995). Thus, we are not persuaded by HABCO's argument that the statutory interest rate of 12% is grossly excessive. As we held in *Zintek*, the constitution does not require that statutory interest rate stay "in virtual lock-step with every fluctuation in market conditions." *Id.* Moreover, the prime lending rate cited by HABCO does not establish that the statutory rate is "well above the market rate," because indicators other than the prime lending rate might more realistically reflect the opportunity cost of the damages to which MCS was entitled, but did not receive, for six years. And finally, § 814.04(4), STATS., provides only simple interest, which yields significantly less than the compound return available with many investments. In sum, nothing about the award of interest to MCS under § 814.04(4), is grossly excessive in relation to the interests the state seeks to protect, which is the standard by which we judge the constitutionality of allegedly excessive damage awards. *See BMW of North America, Inc.*, 517 U.S. at 568.

Finally, we note that as a result of the trial court's JNOV in 1991, HABCO did not face a judgment that it

could have paid to stop the accrual of interest under § 814.04(4), STATS. Nevertheless, it was HABCO that elected to challenge the jury's verdict, thereby initiating the processes that delayed the ultimate judgment for some six years.[4] We conclude that, under the circumstances, it is not inappropriate for HABCO to bear the cost of the delay in MCS's receipt of the damages to which it was entitled by virtue of the jury's verdict in 1991. Accordingly, we affirm the trial court's judgment with respect to the assessment of postverdict interest as provided in § 814.04(4), STATS.

*b. MCS's liability for costs in the retrial of punitive damages.*

█

MCS contends in its cross-appeal that HABCO is not entitled to the costs awarded by the trial court for the retrial of punitive damages, because HABCO did not ultimately prevail on that claim, and the judgment awarding HABCO's costs was reversed on appeal. Thus, MCS argues, the trial court erred when it allowed an offset for HABCO's costs in the retrial, together with interest, in the July 7, 1997 judgment. We agree that this was error. Because HABCO prevailed on a portion of its counterclaim, an award of costs to HABCO is within the discretion of the court. In exercising that discretion, however, the trial court must examine the relevant facts, apply a proper standard of law, and, using a demonstrated rational process, reach a conclusion that a reasonable judge could reach. *See Schneller v. St. Mary's Hosp. Med.*

---

[4] When MCS requested a continuance of the retrial of the punitive damages question, postverdict interest was tolled for the period of the delay.

*Ctr.*, 162 Wis. 2d 296, 306, 470 N.W.2d 873, 876 (1991). We conclude that the trial court erroneously exercised its discretion in awarding these costs to HABCO.

Our opinion reversing the trial court's reduction and subsequent dismissal of MCS's punitive damages claim did not specifically address the question of the costs that had been awarded to HABCO following the retrial on punitive damages. This apparently created some confusion with the trial court, which determined that the award of costs "was never appealed or reversed." The award of costs to HABCO was appealed, however, inasmuch as the award of costs was a part of the judgment dismissing MCS's punitive damages claim. *See Management Computer Servs., Inc.,* 196 Wis. 2d at 592, 539 N.W.2d at 117. When we reversed the judgment dismissing the punitive damages claim, the costs awarded as part of that judgment were also set aside. MCS is ultimately the prevailing party on the punitive damages claim, and accordingly, HABCO is not entitled to costs, and interest on costs, for the retrial of the punitive damages issue.

■

In support of its claim for costs, HABCO cites § 814.035, STATS., which provides:

(1) Except as otherwise provided in this section, costs shall be allowed on counterclaims and cross complaints as if separate actions had been brought thereon.

(2) When the causes of action stated in the complaint and counterclaim and cross complaint arose out of the same transaction or occurrence, costs in favor of the successful party upon the complaint and counterclaim and cross complaint so arising shall be in the discretion of the court.

(3) Costs recovered by opposing parties shall be offset.

HABCO contends, correctly, that it prevailed on a portion of its counterclaim against MCS. (HABCO was awarded $5,140 for a breach of the contract by MCS.) Thus, according to HABCO, it was within the trial court's discretion to award costs to both MCS and HAB CO, and to offset their respective awards of costs. It may well have been within the trial court's discretion to award costs on HABCO's counterclaim, but the trial court did not do so. Rather, the trial court mistakenly believed it was bound by the earlier assessment of costs for the retrial of punitive damages. The award of costs to HABCO on that basis was an erroneous exercise of discretion, and we reverse the offset allowed in the judgment for costs and interest in favor of HABCO in the amount of $14,631.74.[5]

---

[5] This figure apparently includes $576.26 in costs allowed to HABCO on account of MCS's postponement of the second punitive damages trial, and interest thereon. MCS was ordered to pay this amount on August 5, 1992, prior to the second trial, but the order of that date is not in the record before us. Accordingly, we cannot determine if this amount was ordered paid as a sanction for MCS's possible violation of a scheduling order, whether it was ordered on MCS's consent as a condition for rescheduling the second trial, or for some other reason. MCS does not appear to contest this amount, although the discussion of the issue by both parties is terse. If the amount was ordered as a sanction or by consent, as opposed to simply because HAB CO had initially prevailed on the retrial of punitive damages, an offset for $576.26, plus interest, may remain in the judgment. *Cf. Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 196 Wis. 2d 578, 614–15, 539 N.W.2d 111, 125 (Ct. App. 1995), *aff'd in part, rev'd in part*, 206 Wis. 2d 158, 557 N.W.2d 67 (1996) (finding that MCS consented to tolling of interest on judgment during five-month delay of second trial occasioned by

*c. The stay of execution of the judgment.*

MCS contends that the trial court erroneously exercised its discretion to grant a stay of execution of the judgment pending appeal of HABCO'S liability for interest. MCS argues that the stay wrongly deprived M CS of 12% postjudgment interest under § 815.05(8), STATS.[6] We disagree.

██

Under § 808.07(2), STATS., the trial court has broad discretion to stay the execution of a judgment and to condition such a stay upon terms it deems appropriate.[7] We will uphold the trial court's exercise of its discretion, so long as the trial court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See Schneller*, 162 Wis. 2d at 306, 470 N.W.2d at 876. Moreover, even where the trial court's reasoning is not fully reflected in the record, we will "independently review the record to

its request for a continuance, and holding that MCS is judicially estopped from later claiming it did not consent).

[6] Section 815.05(8), STATS., provides:

Except as provided in s. 807.01(4), every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year on the amount recovered from the date of the entry thereof until paid.

[7] Section 808.07(2)(a), STATS., provides as follows:

(2) AUTHORITY OF A COURT TO GRANT RELIEF PEND-ING APPEAL. (a) During the pendency of an appeal, a trial court or an appellate court may:
1. Stay execution or enforcement of a judgment or order;
2. Suspend, modify, restore or grant an injunction; or
3. Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered.

determine whether it provides a basis for the trial court's exercise of discretion." *State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). We conclude that the trial court did not erroneously exercise its discretion in granting the stay conditioned on HAB CO's payment of the amount of the judgment into the court.

The trial court required HABCO to pay the balance of the judgment to the clerk of court, and arranged to distribute the proceeds to several banks in order that the deposits would earn interest and would be within the limits of FDIC insurance. Although payment to the court, rather than to MCS directly, continued to deprive MCS of the use of the funds to which it is entitled under our disposition, the trial court's conditions provided that MCS will realize the full amount of the judgment, plus interest on the funds of approximately 6% per annum. Although this rate of return is less than the statutory rate of 12% under § 815.05(8), STATS., we cannot say that the trial court's arrangement constitutes an erroneous exercise of discretion, particularly in view of the broad discretion granted to the trial court under § 808.07(2)(a), STATS.

We reject MCS's argument that it is entitled to, and being wrongly deprived of, 12% interest on the judgment. That rate is set by statute to accrue on judgments only until they are "paid," which we have determined includes payment to the court as HABCO has done here. *See Downey, Inc. v. Bradley Ctr. Corp.*, 188 Wis. 2d 435, 449, 524 N.W.2d 915, 923 (Ct. App. 1994). As we have discussed above with respect to postverdict, prejudgment interest, one goal of statutory interest mandates is to compensate prevailing parties for the time-value of their money. But the accumula-

tion of postjudgment interest also serves to provide an incentive for judgment debtors to timely pay amounts determined due. *See id.* The present stay order achieves both goals, while guaranteeing for both parties that the "effectiveness of the judgment subsequently to be entered" at the conclusion this appeal will be preserved. *See* § 808.07(2)(a)3, STATS.

MCS also argues that *Downey* was wrongly decided and that payment of the judgment to the court should not terminate the accrual of postjudgment interest under § 815.05(8), STATS. We are not at liberty to disturb *Downey*, and thus we do not consider this argument. *See Cook v. Cook,* 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997). We conclude that the trial court properly exercised its discretion in granting the stay pending appeal, and that the stay tolled the postjudgment interest under § 815.05(8), STATS. Accordingly, we affirm the court's order staying execution of the judgment pending appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed with respect to the offset for costs and interest in the amount of $14,631.74 in favor of HAB CO, and it is affirmed in all other respects. The order of the trial court, entered on May 12, 1998, which stayed the execution of the judgment pending appeal and permitted HABCO to pay the judgment to the clerk of court, is affirmed.

*By the Court.*—Judgment affirmed in part and reversed in part.

*By the Court.*—Order affirmed.