MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff-Respondent,

v.

George V. BOECK, Defendant-Appellant.†

Court of Appeals

*No. 83–675. Submitted on briefs July 16, 1984.—
Decided September 18, 1984.*
(Also reported in 357 N.W.2d 287.)

† Petition to review pending. This petition was not decided at the time this volume went to press. Its disposition will be reported in a later volume.

592

For the appellant the cause was submitted on the briefs of *Foley & Lardner, Richard S. Florsheim* and *Brian W. McGrath* of Milwaukee.

For the respondent the cause was submitted on the brief of *Paul R. Erickson* and *Zirbel, Howard & Malone, S.C.* of Milwaukee.

Before Foley, P.J., Dean and Nettesheim, JJ.

NETTESHEIM, J.   The defendant, George V. Boeck, appeals from a judgment notwithstanding the verdict in favor of the plaintiff, Merrill Lynch, Pierce, Fenner & Smith, Inc.  The trial court dismissed Boeck's counterclaim against Merrill Lynch.  Boeck raises two issues on appeal.  First, he argues that the trial court erred in ruling as a matter of law that Merrill Lynch owed no fiduciary duty to him as its customer.  In the alternative,

Boeck maintains that the trial court erred in refusing to submit the case to the jury on the issue of strict liability for misrepresentation. We conclude that the facts of this case do not establish a fiduciary relationship between Merrill Lynch and Boeck and that the strict liability theory of misrepresentation is not applicable. We therefore affirm the judgment.

Merrill Lynch commenced this action to recover $21,712 that Boeck owed on his investment account for soybean futures transactions from May 1978. Boeck denied liability and counterclaimed for the losses he sustained on the transactions.

George Boeck is an experienced commodities investor who had dealt with two other brokerage houses before opening a commodities account with Merrill Lynch in February 1977. Before he began trading with Merrill Lynch, Boeck subscribed to several publications and services concerned with commodities investments. Boeck signed a commodities account agreement that set forth the risky and speculative nature of investing in commodities futures contracts and that warned of the possibility of significant losses. Merrill Lynch had no authority to decide what trades to make in Boeck's account.

Boeck claims that on May 15, 1978, Mr. Terrill, a commodities broker for Merrill Lynch, told him that Merrill Lynch expected a reduction in Brazilian soybean crops from earlier estimates and that Merrill Lynch recommended the purchase of bull spreads in soybeans and soybean meal. According to Boeck, he was particularly impressed with this information because it allegedly came from Merrill Lynch's soybean expert after a recent trip to Brazil. During the following two weeks, Boeck engaged in a course of margin trading in soybean futures that he claims was based on the representations made by Terrill.[1]

[1] Actually, Boeck was investing in soybean futures with another brokerage house at the same time he was trading with

On May 25, 1978, Merrill Lynch changed its position relative to trading in soybean futures. Boeck received this report on May 31, 1978. He pressed Terrill for more information and eventually liquidated the margin contracts he held. Boeck claims that Terrill learned on May 17, 1978 that the Brazilian government had raised its soybean crop estimates but that Terrill never relayed that information to Boeck. Allegedly, Terrill continued throughout the month of May to tell Boeck that Merrill Lynch recommended purchases of bull spreads in soybeans and soybean meal.

As a result of his soybean futures investments trading in May 1978, George Boeck sustained losses totaling $35,674 consisting of $13,961 out-of-pocket expenses and $21,713 indebtedness to Merrill Lynch. Boeck counterclaimed against Merrill Lynch for those losses.

Boeck claimed that Merrill Lynch had undertaken to provide investment advice and recommendations to him. He further claimed that Merrill Lynch, through its agent Terrill, had made misrepresentations to Boeck or had failed to disclose material facts to Boeck in connection with the transactions. Boeck maintained that he had relied on the statements of Merrill Lynch in entering into the soybean futures transactions and that he had been damaged by his losses in the commodities trading.

Merrill Lynch's claim and Boeck's counterclaim were tried to a jury.[2] Boeck requested that the case be submitted to the jury on four alternative theories: inten-

---

Merrill Lynch. The value of soybeans and soybean meal purchased by Boeck totaled nearly one million dollars.

[2] No instructions or questions were given to the jury on the matter of Merrill Lynch's claim against Boeck. Rather, the jury was told that Merrill Lynch had established its claim. It is unclear from the record whether Boeck conceded the claim to Merrill Lynch or the trial court ruled on Boeck's liability as a matter of law. In the order for judgment, the trial court states that Merrill Lynch's claim was conceded by Boeck.

tional misrepresentation, negligent misrepresentation, strict liability for misrepresentation, and breach of fiduciary duty. The trial court declined to submit the strict liability theory. Over Merrill Lynch's objection, the trial court submitted the breach of fiduciary duty theory to the jury. The jury found that Merrill Lynch neither intentionally nor negligently misrepresented material facts to Boeck. On the theory of breach of fiduciary duty, the jury found that Merrill Lynch had undertaken to counsel and advise George Boeck on investment in soybean futures and that Merrill Lynch had failed to disclose material investment information in its possession. The jury awarded Boeck damages in the amount of $13,961.

On motions after verdict, Merrill Lynch moved for judgment notwithstanding the verdict. The court granted Merrill Lynch's motion, ruling that the breach of fiduciary duty theory should not have been submitted to the jury. Judgment for Merrill Lynch was entered in the amount of Boeck's debit balance owed to the broker. Boeck appeals and asks this court to remand for the trial court to enter judgment in accordance with the jury's verdict. Boeck also appeals the trial court's refusal to submit the strict liability for misrepresentation theory to the jury.

Boeck asserts that Merrill Lynch, as his broker, owed him a fiduciary duty to disclose all material information in its possession relating to the soybean futures market. He argues that Merrill Lynch breached that duty by failing to disclose such information to Boeck.

Boeck maintains that the jury findings entitle him to judgment. Boeck bases his claim that Merrill Lynch owed him a fiduciary duty on our supreme court's holding in *Schweiger v. Loewi & Co.*, 65 Wis. 2d 56, 65, 221 N.W.2d 882, 888 (1974). *Schweiger* involved a claim to recover damages for losses resulting from a broker's

handling of a customer's financial investments. The defendant-broker appealed the trial court's denial of his demurrer to the plaintiff-customer's amended complaint. The court held that the complaint could be construed to allege facts sufficient to state a cause of action on a breach of fiduciary duty theory. *Id.* In its ruling, the supreme court applied the principle that a complaint challenged by demurrer must be liberally construed and is entitled to all reasonable inferences in favor of the pleading. *Id.* at 58, 221 N.W.2d at 884. *Schweiger* thus holds that certain facts and circumstances *may* establish a fiduciary duty—not that all broker-customer relationships are characterized by such a duty. The instant case is not a sufficiency of complaint case. Here, Boeck has had the opportunity to present all of the facts in support of his claim that his relationship with Merrill Lynch was marked by a fiduciary duty.

Thus, we must determine whether the evidentiary record established a fiduciary duty relationship. Because there are no helpful Wisconsin cases, we look to several federal court decisions that articulate the elements of a fiduciary duty between customer and broker.

An action by a customer against a commodities broker for losses sustained as the alleged result of the broker's failure to disclose particular market information is discussed in *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F. Supp. 107 (N.D. Ala. 1971), *aff'd,* 453 F.2d 417 (5th Cir. 1972). The court distinguished between a broker and an investment advisor and went on to state that a broker has a duty to use reasonable efforts to give the customer information relevant to executing the customer's order. *Id.* at 111–13. A fiduciary relationship might arise where there is proof of an express agreement or special circumstances requiring that the broker transmit market information. *Id.* at 112. The

*Robinson* court referred specifically to a special relationship of trust and confidence or a situation where the customer is infirm or ignorant of business affairs. *Id.* at 113. Even in the commodities broker-customer relationship, however, the broker has no continuing duty to relay news of political, economic, weather or price changes to his customer, absent an express contract to furnish such information. *Id.* at 112. Accordingly, *Robinson* held that no fiduciary duty is imposed on brokers who supply investment information incidentally to their brokerage activities.

In the instant case, the record shows no express agreement or special circumstances of Boeck's infirmity or ignorance of business affairs that would justify application of a fiduciary duty. Terrill, as broker for Merrill Lynch, gave investment advice as an incident of his brokerage activities. He provided information in response to Boeck's inquiries. There is no indication of any specific agreement between Merrill Lynch and George Boeck for the provision of investment advisory services.

In *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952–53 (E.D. Mich. 1978), the Federal District Court ruled that the broker-customer relationship required only limited transactional duties where the customer, rather than the broker, determines which purchases and sales to make. Such duties include recommending stock only after sufficient study, informing the customer of the risks involved in buying or selling a particular security, and refraining from misrepresenting any material fact. *Id.* at 953. Ultimately, however, a broker dealing with such an account has no continuing duty to keep abreast of financial information that may affect his customer's account or to inform the customer of developments which could influence his investments. *Id. Leib* did observe that a fiduciary duty would exist

with a discretionary account where the broker made all investment decisions. *Id.*

The record in the case at bar reveals that Boeck made all of the investment transaction decisions. Merrill Lynch's legal obligation to Boeck was limited to executing the commodities futures transactions as requested by Boeck.

The *Leib* analysis was also the basis for the decision in *Shearson Hayden Stone, Inc. v. Leach,* 583 F.2d 367 (7th Cir. 1978).[3] In that case, the court, quoting from *Robinson,* 337 F. Supp. at 113, held that a broker owed no fiduciary duty to a sophisticated investor who made all investment decisions without relying on the broker's advice. *Id.* at 371–72.

Boeck admitted that he had been investing in commodities for several years with different brokerage houses. Boeck subscribed to charting services, knew how to use them, and received several of the same publications utilized by Terrill. Boeck was not a novice to commodities trading and was well aware of its risks and uncertainties. Boeck made all of the investment decisions on his Merrill Lynch account, and Terrill placed the orders at Boeck's request. We conclude that a fiduciary duty should not be imposed on a broker-customer relationship where a sophisticated investor-customer makes all of the investment decisions and there is no express agreement to provide investment advice other than as an incident to brokerage activities.

A motion for judgment notwithstanding the verdict may be granted where the verdict is proper but other rea-

---

[3] Even though the court makes the same distinction, it uses different terminology. In *Shearson,* the court calls the type of account where the customer makes the transaction decisions discretionary. In contrast, the broker-managed account is referred to as nondiscretionary.

sons evident in the record justify judgment for the moving party. Sec. 805.14(5)(b), Stats. Although some courts have confused this motion with a motion to change a verdict answer,[4] the trial court's resolution of this question by judgment notwithstanding the verdict was procedurally correct. The motion for judgment notwithstanding the verdict does not raise the issue as to whether there is sufficient evidence to support the verdict, and the application may not be granted on the ground that the verdict is against the great weight of the evidence. *Herro v. Department of Natural Resources,* 67 Wis. 2d 407, 413, 227 N.W.2d 456, 461–62 (1975). While not challenging the sufficiency of the evidence to support the facts found in the verdict, the motion for judgment notwithstanding the verdict may be used to challenge whether the facts found in the verdict are sufficient to permit recovery. *Id.* at 413, 227 N.W.2d at 462. The motion admits that, for its limited purposes, the findings of the verdict are true but asserts that judgment should be granted to the moving party on grounds other than those decided by the jury. *Id.* at 413, 227 N.W.2d at 461. A motion for judgment notwithstanding the verdict brings to bear the same essential determinations as those raised by a motion for directed verdict.

A motion notwithstanding the verdict amounts to a post-verdict motion for a directed verdict . . . . It is, in a sense, a demurrer to the evidence. It admits the facts found but contends that *as a matter of law* those facts are insufficient, though admitted, to constitute a cause of action. [Emphasis added.]

*Wozniak v. Local 1111, United Electrical, Radio & Machine Workers,* 57 Wis. 2d 725, 733, 205 N.W.2d 369, 373–

---

[4] Section 805.14(5)(c), Stats., provides as follows:

*Motion to change answer.* Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer.

74 (1973), quoting *State v. Escobedo,* 44 Wis. 2d 85, 90–91, 170 N.W.2d 709, 711 (1969).

The issue decided by the trial court presented a question of law. We are not bound by the trial court's determination of such questions. *First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

Since a motion for judgment notwithstanding the verdict equates with a motion for a directed verdict, the evidence must give rise to no dispute as to material issues or must be so clear and convincing as to reasonably permit unbiased and impartial minds to come to but one conclusion. *Wozniak* at 733, 205 N.W.2d at 373. However, even when viewed in this beneficial light favorable to Boeck, the evidence presented does not, as a matter of law, reveal the existence of a fiduciary duty. We therefore affirm the trial court's granting of judgment notwithstanding the verdict in favor of Merrill Lynch dismissing Boeck's claim.

Boeck also appeals the trial court's refusal to submit a strict liability for misrepresentation theory to the jury. The trial court decided that the strict liability theory was inapplicable to the case and would be unduly confusing to the jury. The trial court correctly noted that the strict liability rule is a policy determination placing responsibility on the innocent broker rather than on the innocent customer. *See Gauerke v. Rozga,* 112 Wis. 2d 271, 280–81, 332 N.W.2d 804, 808–09 (1983).

We agree with the trial court's decision not to submit a strict liability theory to the jury. Liability for the strict responsibility theory requires two components. First, the broker must have made untrue representations based on

his own personal knowledge, or in circumstances that indicate that he had means of ascertaining the relevant facts, or where his position made possible complete knowledge of the matter and the statements fairly implied that he had such knowledge. Second, the broker must have had an economic interest in the transaction with the customer so that the broker expected to benefit economically. *Stevenson v. Barwineck,* 8 Wis. 2d 557, 562–63, 99 N.W. 2d 690, 693 (1959) ; *see also* Law Notes for Trial Judges in Wis J I—Civil 2400 (1981), Misrepresentation : Bases for Liability and Damages.

There is no question that Merrill Lynch stood to benefit economically from Boeck's commodities futures trading. It was not in a position, however, to possess *complete* knowledge of the factors relevant to Boeck's trading decisions. Many different complex factors influence the estimates of future crop size in foreign countries. Such factors can change daily, if not more often. The nature of the commodities futures market is so volatile and speculative that complete knowledge is impossible. Even if present, the supply of such voluminous information on a constant and repeated basis is neither practical or possible. Boeck would not be justified in expecting such complete, accurate, and timely information from Merrill Lynch. Imposing strict liability for representations based on such rapidly changing information would create an untenable burden for investment brokers.

*By the Court.*—Judgment affirmed.