# MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff-Respondent,

v.

## George V. BOECK, Defendant-Appellant-Petitioner.

Supreme Court

*No. 83–675. Argued September 6, 1985.—Decided December 11, 1985.*

(Also reported in 377 N.W.2d 605.)

*See Callaghan's Wisconsin Digest, same topic and section number.

129

For the defendant-appellant-petitioner there were briefs by *Richard S. Florsheim, Brian W. McGrath* and *Foley & Lardner,* Milwaukee, and oral argument by *Mr. Florsheim.*

For the plaintiff-respondent there was a brief by *James G. Howard, Paul R. Erickson* and *Zirbel, Howard & Malone, S.C.,* Milwaukee, and oral argument by *Mr. Erickson.*

STEINMETZ, J. The issues decided in this case are:

(1) Does a commodities broker who undertakes to provide investment information and counsel to a customer with a nondiscretionary account, and who later learns that previously given information has been changed or was incorrect, have a fiduciary duty to disclose the latest information before the customer invests through the same broker in reliance on the original disclosure?

(2) Under what circumstances can a commodities broker be held strictly responsible for misrepresentation concerning investment advice?

(3) Based on the jury instructions on fiduciary duty and negligent misrepresentation, is a new trial necessary in the interest of justice for failure to try the real issue?

The circuit court for Dane county, William F. Eich, judge, ruled as a matter of law that Merrill Lynch owed no fiduciary duty to George V. Boeck in granting a judgment notwithstanding the verdict. The court ruled as a matter of law that strict responsibility for misrepresentation was not appropriate. The court of appeals affirmed the trial court judgment in *Merrill Lynch v. Boeck,* 120 Wis. 2d 591, 357 N.W.2d 287 (Ct. App. 1984).

Merrill Lynch commenced this action to recover $21,712 that Boeck owed on his investment account for

soybean futures transactions made during May, 1978. Boeck denied liability and counterclaimed for the losses he sustained on the transactions.

Boeck was an experienced commodities investor who had dealt with two other brokerage houses before opening a commodities account with Merrill Lynch in February, 1977. Before he began trading with Merrill Lynch, Boeck subscribed to several publications and services concerned with commodities investments. Boeck signed a commodities account agreement that set forth the risky and speculative nature of investing in commodities futures contracts and that warned of the possibility of significant losses. Merrill Lynch had no authority to decide what trades to make in Boeck's account.

Boeck was drawn to Merrill Lynch by an advertisement placed by Merrill Lynch in the Wall Street Journal. He stated that he opened the account at Merrill Lynch because the company had a good reputation for financial services and a strong research program in the commodities field.

Douglas Terrill, Boeck's broker at Merrill Lynch, testified that during March, April and May of 1978, Boeck regularly asked what information Merrill Lynch's research department had about particular commodities. Boeck claims that he based his commodities investment decisions on the information and advice given to him by Merrill Lynch.

The critical time period in the relationship between Boeck and Merrill Lynch was May 15, 1978, through June 1, 1978. On May 15, Boeck claims Terrill told him that Merrill Lynch's soybean expert, David Bartholomew, had just returned from a trip to Brazil and that he had sharply reduced his estimate of the size of the Brazilian soybean crop. Bartholomew was reputed to be a world-renowned expert in the soybean industry and Terrill advised Boeck of that fact. Terrill allegedly told Boeck that news of Bar-

tholomew's trip and Bartholomew's estimate of Brazil's crop had not been made public and that based on this news, Merrill Lynch's research department soon would make a very strong recommendation to buy, among other things, bull spreads in soybeans and soybean meal.[1]

It is undisputed that the size of the Brazilian soybean crop was a significant, material factor affecting the price of soybean futures. During the two weeks between May 15 and 31, Boeck purchased $1 million worth of soybean and soybean meal futures. He alleges that he based these purchases on Terrill's representations.

Terrill denied telling Boeck about a visit by Bartholomew to Brazil or that Bartholomew had sharply reduced his estimate of the Brazilian soybean crop. Bartholomew also testified that he never lowered his estimate of the 1978 Brazilian soybean crop below the April estimate and that the crop, in fact, was higher than the April estimate. He denied traveling to Brazil during 1978. However, Merrill Lynch never denied telling Boeck the crop estimate was going down.

On May 17, 1978, Boeck claims that Terrill learned that the Brazilian government had increased, not decreased, its soybean crop estimate. Terrill never told Boeck about this information even though Terrill handled numerous soybean and soybean meal trades for Boeck between May 17 and 30. Over 98 percent of Boeck's losses were sustained as a result of investments he made after May 17. Terrill, however, argues that the May 17 information did not indicate a change in Merrill Lynch's estimate, and, in fact, the reports were not consistent or conclusive. Nonetheless, Merrill Lynch's estimate of Bra-

---

[1] A "bull spread" is a transaction designed to capitalize on what appears to be a rising market. It consists of a contract to buy a quantity of a commodity in one month and sell the same quantity of a commodity in a subsequent month.

zil's soybean crop was higher than Terrill's alleged representation of Bartholomew's estimate.

Boeck requested that the case be submitted to the jury on four alternative theories: intentional misrepresentation, negligent misrepresentation, strict responsibility for misrepresentation and breach of fiduciary duty. The trial court refused to give an instruction or submit a verdict question on the strict responsibility theory of misrepresentation. Over the objections of Merrill Lynch, the trial court submitted the breach of fiduciary duty issue to the jury.

The jury found that there had been no intentional or negligent misrepresentation. The jury did find, however, that Merrill Lynch undertook to provide Boeck with investment advice and counsel concerning soybean futures between May 1 and June 1, and that Merrill Lynch failed to provide Boeck with material information in its possession, thereby causing Boeck to lose money. The basis of the finding was evidence of Terrill's silence regarding the May 17 information. This finding constituted a breach of fiduciary duty, if such duty existed. The circuit court then granted judgment notwithstanding the verdict based on the court's conclusion that no fiduciary duty existed.

## BROKER'S FIDUCIARY DUTY

■ The court of appeals held as a matter of law that a broker who provides advice and counsel to a customer with a nondiscretionary account does not have a fiduciary duty to that customer. We agree. The broker, however, does owe the customer a duty of ordinary care.

■ Both parties rely on *Schweiger v. Loewi & Co., Incorporated,* 65 Wis. 2d 56, 221 N.W. 2d 882 (1974), to support their respective claims concerning a broker's fiduciary

duty. In that case, this court held that a broker who is "handling" a customer's financial investments owes that customer a fiduciary duty. *Id.* at 64. Boeck argues that this holding imposes a fiduciary duty in broker-customer relationships, such as the one in the present case. Merrill Lynch contends that *Schweiger* only imposes a fiduciary duty in the case of discretionary accounts. We agree that a broker does not have a fiduciary duty to a customer with a nondiscretionary account absent an express contract placing a greater obligation on the broker or other special circumstances.

We are persuaded by the decisions from other jurisdictions refusing to impose a fiduciary duty in the case of nondiscretionary accounts. In *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F. Supp. 107 (N.D. Ala. 1971), aff'd. 453 F. 2d 417 (5th Cir. 1972), that court held that a fiduciary duty did not arise to require the transmission of all extrinsic facts or opinions related to the market in question unless there was an express contract or special circumstances which required defendant to transmit to plaintiff such information.

> "To make this defendant or any other broker the guardian of a customer such as the plaintiff would destroy an important part of the marketplace. In every case a trader could recover damages from his broker merely by proving non-transmission of *some* fact which, he could testify with the wisdom of hindsight, would have affected his judgment had he learned of it." *Id.* at 113. In the instant case, there is no indication of any express agreement or special circumstances between Merrill Lynch and Boeck for the provision of investment decision services.

In *Leib v. Merrill Lynch, Pierce, Fenner & Smith,* 461 F. Supp. 951, 952–53 (E.D. Mich. 1978), the customer had a nondiscretionary account with his broker, *i.e.,* an account in which the customer rather than the broker de-

termines which purchases and sales to make. Under those facts, that court held: "Unlike the broker who handles a non-discretionary account, the broker handling a discretionary account becomes the fiduciary of his customer in a broad sense." *Id.* at 953. A discretionary account is one where the broker makes all the investment decisions.

*Shearson Hayden Stone, Inc. v. Leach,* 583 F. 2d 367 (7th Cir. 1978), also adopted the *Robinson* rationale in the context of a nondiscretionary account. Similar to Boeck, the investor in *Leach* made all the investment decisions. *Caravan Mobile Home Sales v. Lehman Bros. Kuhn Loeb,* 769 F. 2d 561 (9th Cir. 1985), applied the same reasoning to reject the argument that a broker breached a fiduciary duty to a customer. That case also involved a nondiscretionary account.

Our decision in *Gries v. First Nat. Bank of Milwaukee,* 82 Wis. 2d 774, 264 N.W. 2d 254 (1978), does not change our interpretation of *Schweiger.* *Gries* at 778 states: "[I]n *Schweiger,* . . . [t]his court recognized that persons offering financial investment services have a fiduciary duty to disclose to their clients all material information concerning the transaction involved." We continue to adhere to this statement of the law in the context of discretionary accounts. Because *Schweiger* addressed the sufficiency of the complaint, it was inappropriate for this court to determine as a matter of fact whether the customer had a discretionary or nondiscretionary account. We did not state or intend, however, to impose a fiduciary duty in the case of nondiscretionary accounts in *Schweiger.*

The record in this case reveals that Boeck had a nondiscretionary account and that he made all the investment transaction decisions on his Merrill Lynch account. Terrill merely placed the orders at Boeck's request. Boeck was an experienced commodities trader who was aware

135

of the risks and uncertainties of that type of investing. There is no express agreement or special circumstances to provide investment advice other than as an incident to brokerage activities. Upon these facts, we hold that a broker does not owe a fiduciary duty to an investor-customer who makes all of the investment decisions, unless there is an express agreement placing a greater obligation on the broker or other special circumstances. We are unpersuaded by the decisions of the Commodities Futures Trading Commission which Boeck construes as reaching a contrary result.

■ We also are unpersuaded by the concurrence's argument that a broker may become a fiduciary for a person with a nondiscretionary account by gaining the person's trust and confidence and purporting to advise that person with the other's interest in mind. A fiduciary relationship does not arise merely because a broker offers advice and counsel upon which a customer has a right to place trust and confidence. The right to place trust and confidence in the reliability of representations involving commercial transactions already is protected by the law of misrepresentation. *See Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 29–40, 288 N.W. 2d 95 (1980) (discussing the easing of the rule of caveat emptor in commercial transactions). A fiduciary relationship arises from a formal commitment to act for the benefit of another (for example, a trustee) or from special circumstances from which the law will assume an obligation to act for another's benefit. The mere fact of reliance on representations, therefore, does not necessarily create a relationship of trust and confidence leading to a fiduciary duty. Thus, we do not hold that a fiduciary duty may arise out of every circumstance where there is a relationship of trust and confidence between the parties.

136

Here, Merrill Lynch did not formally agree to make investment decisions for Boeck. In fact, Boeck always remained ultimately responsible for making investment decisions, as required by his nondiscretionary account. Also, no special circumstances exist from which we could find that Merrill Lynch should be responsible as a fiduciary for Boeck's investment decisions. Moreover, if we held that a broker is a fiduciary in these circumstances, then an investor could allege that the broker exercised poor judgment when advising the investor. This is because the duty of a fiduciary is greater than simply the duty not to misrepresent. A professional fiduciary, like a broker, also would be held to a higher degree of skill and care than a man of ordinary prudence. *See Estate of Scheibe,* 30 Wis. 2d 116, 120, 140 N.W. 2d 196 (1966). Recognizing the full implications of treating a broker as a fiduciary, we refuse to hold that a broker is liable as a fiduciary for representations to an investor with a nondiscretionary account. We would make a broker a guarantor of a customer's investments if we held otherwise.

■The trial court initially submitted a verdict question to the jury on the issue of fiduciary duty after giving instructions on that theory. After the jury found a breach of fiduciary duty, the court granted Merrill Lynch's motion for judgment notwithstanding the verdict, pursuant to sec. 805.14(5)(b), Stats.[2] The motion admits that, for its limited purposes, the findings of the verdict are true but

---

[2] Sec. 805.14(5)(b), Stats., provides:

*"Motion for judgment notwithstanding verdict.* A party against whom a verdict has been rendered may move the court for judgment notwithstanding the verdict in the event that the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment."

asserts that judgment should be granted to the moving party on grounds other than those decided by the jury. *Herro v. Dept. of Natural Resources,* 67 Wis. 2d 407, 413, 227 N.W. 2d 456 (1975). In *Wozniak v. Local 1111 of UE,* 57 Wis. 2d. 725, 733, 205 N.W. 2d 369 (1973), citing *State v. Escobedo,* 44 Wis. 2d 85, 90, 91, 170 N.W. 2d 709 (1969), we stated:

> " 'A motion notwithstanding the verdict amounts to a post-verdict motion for a directed verdict . . . It is, in a sense, a demurrer to the evidence. It admits the facts found but contends that as a matter of law those facts are insufficient, though admitted, to constitute a cause of action.' "

The evidence presented and viewed in the most favorable light to Boeck does not, as a matter of law, reveal the existence of a fiduciary duty. The trial court therefore correctly granted judgment notwithstanding the verdict that Merrill Lynch breached its fiduciary duty to Boeck. The court of appeals also correctly affirmed the trial court's determination.

### STRICT RESPONSIBILITY OF BROKER

Boeck also argues that the court of appeals erred by upholding the trial court's refusal to submit a strict responsibility theory of misrepresentation to the jury. We agree with the trial court and the court of appeals that strict responsibility is not properly an issue in this case.

Strict responsibility for misrepresentation only is appropriate in circumstances where the speaker appears to have such personal knowledge that it is expected he is providing infallible information. In *Whipp v. Iverson,* 43 Wis. 2d 166, 169–70, 168 N.W. 2d 201 (1969), we stated the considerations that determine whether strict responsibility applies:

138

> "In strict responsibility, the misrepresentation must be made on the defendant's personal knowledge or under circumstances in which he necessarily ought to have known the truth or untruth of the statement and the defendant must have an economic interest in the transaction. Intent to deceive and good-faith belief in the truth of the representation are immaterial. In this classification the speaker is supposed to possess complete knowledge of the facts or could normally be expected to know them without investigation. Harper and McNeely, *A Synthesis of The Law of Misrepresentation,* 22 Minn. L. Rev. (1938), 939, at Note 12, p. 988. A person is therefore justified in expecting infallibility as to the representations of facts."

█ Applying the above test to the facts of this case, we conclude that information about estimated crop sizes is not the type of information where infallibility is expected. We also refuse to hold a broker strictly liable to accurately report crop sizes estimated by various sources because such estimates can fluctuate suddenly without the broker's awareness.

*Gauerke v. Rozga,* 112 Wis. 2d 271, 280, 332 N.W. 2d 804 (1983), supports our conclusion that strict responsibility is inappropriate in this case. There we reiterated the factors influencing imposition of strict responsibility:

> "The policy behind strict responsibility for misrepresentation is stated in the Law Notes for Trial Judges in Wis. J.I.—No. 2400, Misrepresentation: Bases for Liability and Damages:
>
> " 'Strict responsibility for misrepresentation, the second basis, applies to those situations where public opinion calls for placing the loss on the innocent defendant rather than on the innocent plaintiff. In *Stevenson [v. Barniweck,* 8 Wis. 2d 557, 99 N.W. 2d 690 (1959)], the court (citing Prosser) required the presence of two factors before liability would be found: (1) a rep-

139

resentation made as of defendant's own knowledge, concerning a matter about which he purports to have knowledge, so that he may be taken to have assumed responsibility as in the case of warranty, and (2) a defendant with an economic interest in the transaction into which the plaintiff enters so that defendant expects to gain some economic benefit. In other words, strict responsibility applies in those circumstances which "indicate that the speaker either had particular means of ascertaining the pertinent facts, or his position made possible complete knowledge and the statements fairly implied that he had it." Therefore, the speaker ought to have known or else ought not to have spoken.' "

Prosser, Law of Torts (2d ed.) at 548, sec. 88, also notes the limited use of strict liability in misrepresentation cases, except in the case where a speaker is expected to guarantee his accuracy:

"It seems clear that . . . there is a more or less conscious policy of placing the loss upon the innocent defendant rather than the innocent plaintiff who has been misled, in cases where public opinion seems to call for such a result. Thus far it has resulted only where the representation is made as of the defendant's own knowledge, concerning a matter as to which he purports to have knowledge, so that he may be taken to have assumed responsibility as in the case of a warranty."

In *Stevenson*, 8 Wis. 2d at 562, we favorably cited this reasoning as controlling the use of strict responsibility for misrepresentation.

Here, Merrill Lynch had an interest in Boeck's transaction from which it expected to benefit economically, which is one of the criteria for strict liability. *Stevenson* at 562–63; *see* also Law Notes for Trial Judges in Wis. J.I.—Civil 2400 (1981). Boeck did not show, however, that

Merrill Lynch made untrue representations based on Terrill's own personal knowledge, or in circumstances which indicate that he had means of ascertaining the relevant facts, or that his position made possible complete knowledge of the matter or that the statements he made fairly implied he had such knowledge. *Id.* at 562–63. Many different complex factors influence the estimate of future crop size in foreign countries. Such factors can change daily, if not more often. Governmental and world policies and economics, as well as weather conditions, can affect crop production. The nature of the commodities futures market is so volatile and speculative that complete knowledge is impossible. Imposing strict responsibility for representations based on rapidly changing, voluminous and sometimes conflicting information would create an untenable burden for investment brokers. Moreover, we do not hold a broker strictly responsible to accurately report crop estimates because such estimates vary without notice to the broker. Brokers do have a common law duty based on negligence standards not to misrepresent known crop estimates.

We hold the trial court was correct in not including a question on the verdict or submitting the issue of strict responsibility to the jury.

## INTEREST OF JUSTICE

Although the trial court and the court of appeals correctly ruled that Merrill Lynch did not owe Boeck a fiduciary duty and that strict responsibility is not an issue in this case, we conclude that Boeck is entitled to a new trial on the negligent misrepresentation theory of liability. We base this conclusion on the fact that the real controversy was not fully and fairly tried. Section 751.06, Stats.; *State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W. 2d 745 (1985).

141

The trial court erroneously permitted this case to proceed to the jury for deliberation on the fiduciary duty theory of liability. Boeck, in reliance on this error, argued that Terrill's failure to disclose information about the May 17 report (allegedly indicating higher Brazilian soybean production than represented on May 15) constituted a breach of fiduciary duty. Boeck did not argue that Terrill's silence constituted a negligent misrepresentation, most likely because he believed that breach of fiduciary duty was easier to prove. Terrill's alleged silence, however, may constitute a negligent misrepresentation. We conclude, therefore, that submission of the fiduciary duty theory to the jury prejudicially misled Boeck not to pursue the possible negligent misrepresentation claim. As a result, the real controversy was not fully tried. We order that Boeck be granted a new trial limited to the issue of negligent misrepresentation.[3] At the new trial, Boeck may attempt to establish negligent misrepresentation based on Terrill's alleged failure to disclose, as well as any allegedly erroneous actual statements.

For the purpose of clarification at the new trial, we note that a broker does not have an *a priori* duty to disclose known and relevant information about investments contemplated by a customer. The broker may simply transact the customer's purchase or sell orders without making any representations. The broker's duty may change, however, if he volunteers information that he was not otherwise obligated to provide. He may not give such information negligently. If such initial information is given, the broker then has a duty to disclose subsequently acquired information that he knows will make a

---

[3] Boeck's debt to Merrill Lynch is uncontested. The new trial, therefore, is limited to Boeck's counterclaim against Merrill Lynch.

142

previous representation erroneous or misleading.[4] This duty to disclose only exists if the client has not yet completed his transaction or if the client directs the broker to make subsequent additional transactions in reasonable reliance on the original representation.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (concurring). I agree that the case should be remanded. Upon reviewing the instructions on negligent and intentional misrepresentation[1] and on fiduciary duty,[2] I conclude that the ju-

---

[4] *See* Restatement (Second) of Torts, ch. 22 Misrepresentation: Pecuniary Loss, sec. 551 Liability for Nondisclosure:

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

". . . .

"(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and. . . ."

[1] There are four elements in a cause of action for negligent misrepresentation and five for intentional misrepresentation, and the jury was so instructed. The first element in each cause of action—and the one in issue in this review—is that the broker made a representation of fact. The circuit court correctly instructed the jury that a representation may be made by an affirmative act or by silence if there is a duty to disclose. If there is a duty to speak, a failure to disclose is treated in the law as equivalent to a representation of the nonexistence of the fact. *Ollerman v. O'Rourke Co., Inc.*, 94 Wis. 2d 17, 26, 46, 288 N.W. 2d 95 (1980); Restatement (Second) of Torts, sec. 551 (1).

A duty to speak may arise from a number of circumstances. See Restatement of Torts (Second), sec. 551 (1976). See note 5 *infra*.

rors were not adequately advised that it was their duty to determine whether, under the circumstances of this case, there was a relationship of trust and confidence that would give rise to a duty on the broker to disclose material information about the transaction in issue.[3] If there was a duty to disclose material information, the failure to disclose could constitute intentional or negligent misrepresentation. I would therefore remand this case for retrial, in the interests of justice, on the issues of negligent and intentional misrepresentation. Restatement (Second) of Torts, sec.

---

In this case, the circuit court following Wis. J.I.-Civil No. 2043, instructed the jury as follows on the first element of negligent and intentional misrepresentation:

"First, that the plaintiff made the representation of fact. Representations of fact do not have to be in writing or even by word of mouth. They may be by acts or conduct on the part of the plaintiff or even by silence, if there is a duty to speak. A duty to speak may arise when information is asked for or where circumstances would call for a response in order that the parties may be on an equal footing, or *where there is a relationship of trust or confidence between the parties.*

"An expression of opinion which either indicates some doubt as to the speaker's belief in the existence of a state of fact, or merely expresses his judgment on some matter such as quality, value, authenticity and the like, does not constitute a representation of fact. However, a statement of opinion carries with it an implied assertion that the speaker knows that the facts exist which support his opinion, may, in your discretion, be determined by you to be representation of fact. In making your determination, you may consider the form and the manner of expression, *or the existence of a trust or confidence relationship between the parties.*" (Emphasis added.)

[2] The circuit court instructed the jury that if the broker undertook to advise and counsel the customer with respect to financial investments, the broker assumed a fiduciary duty to disclose all material information in the broker's possession as to the transactions involved.

[3] Material information is information that a reasonable person would attach importance to in determining a choice of action in the transaction in question. 3 Restatement (Second) of Torts sec. 538. The majority's fear of imposing on brokers too heavy a duty to disclose is based on an erroneous characterization of what such a duty would entail. Pp 134–135.

551(1)(2) (1976). The real controversy was not fully and fairly tried. Sec. 751.06, Stats. 1983–84.

I do not join the majority opinion because it misconstrues the concepts of fiduciary duty and trust and confidence and erroneously limits the issues on remand.[4]

The central issue in this case concerns the nature of the relation between a customer who has a nondiscretionary account and the broker. The relation is one of principal and agent, and the broker, like other agents, is a fiduciary. 1 Restatement (Second) of Agency, sec. 1 (1958). A fiduciary is under a duty to act for the benefit of another as to matters within the scope of the relation, *e.g.*, with respect to matters within the scope of the agency.

The extent of the duties imposed is not identical in all fiduciary relations. 1 Restatement (Second) of Agency, sec. 1 (1958); 1 Restatement (Second) of Trusts, sec. 2, comment b, pp. 6–7 (1976). In a nondiscretionary account the scope of the broker's agency is generally to execute the customer's instructions. Aside from the fiduciary duty arising out of the express agreement that the broker buy and sell investments as instructed, the broker-customer relation is not one traditionally recognized as a fiduciary relation. The majority is correct therefore in holding that the broker-customer relation alone does not, in this case,

---

[4] In summary, I agree with the majority that the circuit court erred in instructing the jury that a broker who undertakes to advise and counsel a customer with a nondiscretionary account has, as a matter of law, a duty to disclose material information relating to the transaction. I also agree with the majority that in the absence of an express agreement or *special circumstances,* a broker who provided incidental investment information to a customer with a nondiscretionary account has no fiduciary duty, as a matter of law, to disclose all material information regarding the transaction in which the customer engages. In my view, the question of whether giving information, advice or counsel gives rise to a duty to disclose material information depends on the circumstances in the particular case.

145

give rise to a fiduciary duty to disclose all material information.

Nevertheless, a "nonfiduciary" business relationship may become a relationship of trust and confidence when one person gains the confidence of the other and purports to act or advise that person with the other's interest in mind. Bogert, *Trusts and Trustees* Section 482 (1978); Page and Keeton, *The Law of Torts* sec. 106, p. 738 (1984); James and Gray, *Misrepresentation-Part II,* 37 Md. L. Rev. 488, 524–525 (1978); Restatement (Second) of Trusts, sec. 2, p. 7 (1957); 1 Scott, *Trusts,* sec. 2.5, pp 39–42 (1967). In this case a relationship of trust and confidence would impose on the broker the same duty that a traditional fiduciary relationship might impose, namely, a duty to disclose material facts relating to the transaction in question. Restatement (Second) of Trusts, sec. 2, Comment, p. 7; Restatement (Second) of Torts, sec. 551(1)(2)(a).

Brokers may sometimes give incidental advice or information in executing their duties for customers with nondiscretionary accounts. The broker does not gain the trust and confidence of the customer simply by virtue of providing incidental advice. Nevertheless, a broker must use due care in giving advice even where there is no relation of trust and confidence. In exercising due care a broker must disclose subsequently acquired information that he knows will make untrue or misleading a previous representation that was true or believed when made. Restatement (Second) of Torts, sec. 551(1)(2)(c).[5]

---

[5] Sec. 551, Restatement (Second) of Torts, entitled Liability for Nondisclosure, provides as follows:

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or to refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise

146

A relationship of trust and confidence would place an additional duty upon the broker to disclose material information whether or not the subsequently acquired information makes untrue or misleading a previous representation. Whether a broker placed himself or herself in a position of trust and confidence depends on many circumstances, including the course of conduct between the broker and the customer, the customer's sophistication, the extent to which the broker undertakes to give advice and counsel, whether the customer in fact placed confidence in the broker, and whether the customer was justified in placing confidence in the broker.

---

reasonable care to disclose to the other before the transaction is consummated,

"(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

" . . .

"(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

" . . .

"(e) facts basic to the transaction, if he knows that the other is about to enter it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

For a discussion of sec. 551, see *U.S. Nat. Bank of Oregon v. Fought,* 291 Or. 201, 630, p. 2d 337 (1981); *Central States Stamping Co. v. Terminal Equipment Co., Inc.,* 727 F. 2d 1405, 1409 (6th Cir. 1984).

*See also, e.g., Briggs v. Goodwin,* 698 F.2d 486, 492, *rehearing granted and opinion vacated* 712 F.2d 1444 (D.C. Cir. 1983), *cert. denied* 464 U.S. 1040, 104 S.Ct. 704 (1984) (common law tort principles of misrepresentation and deceit impose a duty to correct an incorrect statement to those justifiably relying on it): *U.S. Fidelity & Guaranty Co. v. Black,* 313 N.W.2d 77, 89 (Mich. 1981) (parties to business transactions are under a general obligation to disclose information that renders previous representations untrue or misleading); *Miles v. McSwegin,* 388 N.E.2d 1367, 1369 (Ohio 1979) (seller of residential property under duty to disclose information that made earlier representations incorrect).

In sum, there is no special formula for determining whether a relationship of trust and confidence exists. The disposition of this issue depends on the circumstances. In Wisconsin, the question of whether such a relationship exists is for the jury.

The issue in this case, then, is whether there was sufficient evidence for the circuit court to submit to the jury the question whether there were special circumstances which gave rise to a relationship of trust and confidence, thereby imposing on the broker the duty to disclose all material information about the transaction involved.

I conclude that in this case there was sufficient evidence for the question to go to the jury. The broker testified at trial that the customer "regularly" asked "what Merrill Lynch's Research Department had to say about . . . particular commodities" during March, April, and May of 1978. In addition, a letter from the broker to customer Boeck (dated August 9, 1977) was admitted into evidence in which the broker described the initiation of a "dual approach concept . . . to provide your account with continuous attention and monitoring." Boeck also testified that the broker called him every morning and at least twice a day when he was not on the road. Boeck selected the broker on the basis of the firm's advertisements representing the firm's ability to provide advice and counsel. Although the customer's skill and expertise suggest the absence of trust and confidence, the jury, had it been properly instructed, could have found that a relationship of trust and confidence existed.

The majority holds that a broker who provides advice and counsel to a customer with a nondiscretionary account has a fiduciary duty to disclose all material information regarding a customer's transaction if there is an express agreement or *special circumstances*. Pp. 135–136. The majority opinion repeatedly recognizes—seven times to be precise—that *special circumstances* can impose a

fiduciary duty on the broker to disclose material information to a customer with a nondiscretionary account. See pp. 133, 134, 135 and 136–137.[6] The majority fails, however, to explain what it means by the phrase *special circumstances.* Moreover, it then states—without explanation—that there are no *special circumstances* in this case which could give rise to a relationship of trust and confidence.[7] In stating in a conclusory fashion that no special circumstances exist in this case, the majority not only misapplies the law, it fails to provide guidance to the industry and the courts.

Refusing to remand the case for the jury to determine whether any special circumstances existed in this case,

---

[6] For a discussion of "special circumstances" creating a relation of trust and confidence which gives rise to a duty to disclose material information, see, *e.g., Shearson, Hayden, Stone, Inc. v. Leach,* 583 F.2d 367, 371–72 (7th Cir. 1978) (customer made all investment decisions; no requirement to relay market information unless a fiduciary relationship existed); *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F. Supp. 107, 113 (N.D. Ala. 1971), *aff'd,* 453 F.2d 417 (5th Cir. 1972) ("absent an express . . . contract there is no fiduciary duty unless the customer is infirm or ignorant of business affairs"); *Leib v. Merrill Lynch, Pierce, Fenner & Smith,* 461 F. Supp. 951, 954 (E.D. Mich. 1978) (where sophisticated investor had nondiscretionary account, social or personal involvement may give rise to relation of trust and confidence).

[7] The question of whether the facts of a particular case give rise to a duty by the broker to disclose material information is one for the jury to decide on the basis of all the circumstances in the case. See *Killeen v. Parent,* 23 Wis. 2d 244, 251, 127 N.W.2d 38 (1964); Wis. J.I.-Civil No. 2402, 2403, and the instructions in this case. Without any discussion, the majority opinion deviates from this precedent by deciding whether there are special circumstances from which the law will assume an obligation to act. P. 136. Compare Prosser and Keeton, *The Law of Torts,* sec. 106, p. 739 (1984), which states that the issue of whether there is a duty of disclosure because the circumstances are such that the failure to disclose something would violate a standard requiring conformity to what the ordinary ethical person would have disclosed has been regarded in some jurisdictions as one for the court rather than the jury. Sec. 551(2)(e), Restatement (Second) of Torts. See also *Ollerman v. O'Rourke Co.,* 94 Wis.2d 17, 27, 31, 288 N.W.2d 95 (1980).

.

149

the court limits the scope of the remand on the issue of negligent misrepresentation: The jury is to consider only affirmative misrepresentations and the broker's failure to disclose information which rendered previously stated information false or misleading. Restatement (Second) of Torts, sec. 551 (1)(2)(c). Majority opinion pp. 142–143.

The critical problem in the majority's opinion is demonstrated in its mischaracterization of the issue presented. The majority poses the issue in the case as follows: "(1) Does a commodities broker who undertakes to provide investment information and counsel to a customer with a nondiscretionary account, and who later learns that previously given information has been changed or was incorrect, have a *fiduciary* duty to disclose the latest information before the customer invests through the same broker in reliance on the original disclosure?" P. 130. (Emphasis added.) The question of whether a broker who has furnished information has a duty to correct that information is distinct from the question of whether a broker who undertakes to advise and counsel has a *fiduciary* duty to disclose all material information. Moreover, the question of whether a fiduciary relation exists as a matter of law is distinct from the question of whether there is in fact a relationship of trust and confidence that would give rise to a duty to disclose.

The majority's confusion regarding the nature of the fiduciary duty and the type of information that should be disclosed is also revealed when the majority states: "recognizing the full implications of treating a broker as a fiduciary, we refuse to hold that a broker is liable as a fiduciary for representations to an investor with nondiscretionary account. We would make a broker a guarantor of a customer's investments if we held otherwise." (At 137.) Disclosure of material information would not make the broker a guarantor of a customer's investment. The duty to disclose material information to a cus-

150

tomer with a nondiscretionary account is distinct from a duty to propose a financially successful course of trading or investment.

In instructing the jury on negligent and intentional misrepresentation in this case, the circuit court correctly advised the jury that a misrepresentation may be made by silence if there is a duty to speak. The circuit court further instructed the jury that it could conclude that the broker had a duty to speak if it determined that the relation between the broker and customer was one of trust and confidence. The circuit court failed, however, to inform the jury what circumstances might give rise to such a relation and probably confused the jury with the erroneous instruction regarding a fiduciary duty to disclose material information. I would therefore remand the case for a new trial on all the issues involved in negligent and intentional misrepresentation, including the question of a duty to speak arising from a relation of trust and confidence.

I cannot join the majority opinion which excludes the element of trust and confidence in the remand for a retrial on the question of negligent misrepresentation.

LOUIS J. CECI, J. *(dissenting).* I agree with the majority that the court of appeals' decision must be reversed; however, I disagree with that part of the majority's opinion which holds that Merrill Lynch had no fiduciary duty to Boeck to disclose material investment information. I would reinstate the jury's verdict which determined that Merrill Lynch failed to provide Boeck with material information in its possession.

Although no express contract existed between Merrill Lynch and Boeck regarding investment advisory services, there is no doubt that Merrill Lynch undertook to provide such advice and market information to Boeck as an incident to the commodities account agreement. Dis-

151

.

puted testimony indicates that Merrill Lynch's soybean expert subsequently reduced sharply his previous estimate of the Brazilian soybean crop.

It is undisputed, however, that Merrill Lynch never denied telling Boeck that the crop estimate was going down (majority op. 132.) Nor is it questioned that Merrill Lynch failed to inform Boeck that the Brazilian government had increased its estimate to the country's soybean crop. And no one, not even the majority, disputes that "the size of the Brazilian soybean crop was a significant, material factor affecting the price of soybean futures." (Majority opinion at 132.)

Boeck established that he sustained over ninety-eight percent of his losses in soybean futures as a result of investments made after the critical date of May 17, 1978, the date when Boeck asserts that Terrill first learned that the Brazilian government's soybean estimate directly varied with the Merrill Lynch estimate. Merrill Lynch, through Terrill, never relayed this critical information to Boeck. In other words, the jury found, and nowhere does the majority disagree, that Merrill Lynch undertook to provide its client Boeck with material investment advice and failed to provide Boeck with critical information in its possession which varied with its earlier information. This constitutes a breach of Merrill Lynch's fiduciary duty owed to Boeck. The breach caused Boeck to sustain substantial losses in the soybean market.

The extent of a broker's fiduciary duty in this situation would require that it disclose to the client all significant, material information in its possession regarding the transactions involved. *See, Schweiger v. Loewi & Co.,* 65 Wis. 2d 56, 64, 221 N.W.2d 882 (1974). Here, Merrill Lynch would be required to disclose to Boeck all significant, material information regarding the status of the Brazilian soybean crop. Merrill Lynch's fiduciary duty subsumes, at the very least, a responsibility to disclose in-

152

formation it possesses which is contrary to the significant, material information it originally gave to the client. A finding that Merrill Lynch breached its fiduciary duty owed to Boeck would not make Merrill Lynch "a guarantor of [Boeck's] investments." (Majority opinion at 137.) Rather, such a finding would merely make a broker liable for its fiduciary breaches.

A finding that a client's account is nondiscretionary is irrelevant in determining the existence of a fiduciary duty, especially where the majority concedes, as it does here, that special circumstances may give rise to fiduciary obligations. Although Boeck's account with Merrill Lynch was nondiscretionary, there are special circumstances in this case which give rise to a relationship of trust and confidence between Merrill Lynch and Boeck; namely, Merrill Lynch initially disclosed to Boeck significant, material market information, upon which Boeck was entitled to rely.

Boeck testified that he reposed his trust and confidence in Merrill Lynch based on its full-page advertisement in a national newspaper and its reputation of a strong research program in commodities. Indeed, Merrill Lynch, like other major brokers, has promoted itself through radio and television advertisements. Merrill Lynch proclaims itself to be a "breed apart" and asserts that it works hard to keep its clients informed! Obviously, no part of this herd would admit, or even imply, that they withhold significant and material information from the client, or that their clients' trust and confidence is misplaced.

The majority's invocation of *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337 F.Supp. 107 (N.D. Ala. 1971), *aff 'd*, 453 F.2d 417 (5th Cir. 1972), is unpersuasive. *Robinson* held that a broker does not have a duty to inform the client of all facts and opinions concerning a particular market absent an express contract to furnish

such information. Boeck and Merrill Lynch did not have such a contract here. But neither does Boeck assert a right to receive "all facts and opinions" of and from the broker. Instead, he only asserts Merrill Lynch's duty to disclose significant and material information regarding the Brazilian soybean market. I do not advocate allowing a client to "recover damages from his broker merely by proving [a broker's] non-transmission of some fact. . . ." *Id.* at 113 (emphasis in original). Rather, the broker has a duty to relate to the client *significant, material* factors affecting the relevant market.

I do not doubt that Boeck was an experienced investor, as the majority claims. But even an experienced investor without full information will make poor investment decisions. He or she certainly cannot make reasoned judgments based upon information initially provided when contrary, significant, and material information is subsequently withheld. Investment experience merely allows an investor to better interpret and analyze market information; it is not a substitute for market information.

The trust and confidence which Boeck placed in Merrill Lynch became legally significant when Merrill Lynch undertook to inform Boeck of the status of the soybean commodities market and of its own decreased projections for the Brazilian soybean crop. Merrill Lynch breached its fiduciary duty when it failed to inform Boeck of the significant, material information of the Brazilian government's promising forecasts for the crop. The jury was correct in its verdict determination regarding breach of fiduciary duty; I disagree with the majority's contrary conclusion.