KINSMAN, Respondent, v. PANEK and another, Appellants.

*No. 16. Argued October 2, 1968.—Decided October 29, 1968.*
(Also reported in 162 N. W. 2d 27.)

---

410

412

For the appellants there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway*, attorneys, and

*Roger Rouse* of counsel, all of Wausau, and oral argument by *Mr. Rouse.*

For the respondent there was a brief by *Weber & Bolte* and *Richard J. Weber,* all of Wausau, and oral argument by *Richard J. Weber.*

HEFFERNAN, J.   In reviewing a trial court's order following motions after verdict, whether it sustains or sets aside a jury's verdict the same test is to be applied on appeal, namely:

". . . that when there is any credible evidence which, under any reasonable view, fairly admits of an inference that supports the jury's finding, neither the trial court nor this court should change the jury's finding." *Rodenkirch v. Johnson* (1960), 9 Wis. 2d 245, 248, 101 N. W. 2d 83.

Frequently, on appeal, the court's decision on motions after verdict has been attacked by an appellant who seeks to set aside a verdict which has received the approval of the trial judge. In those cases we have stated the rule:

"The jury's findings which have the approval of the trial court will not be disturbed if there is any credible evidence to support such findings." *Ide v. Wamser* (1964), 22 Wis. 2d 325, 331, 126 N. W. 2d 59.

In any case, however, this court looks to the jury's verdict; and if there is credible evidence to sustain the jury's verdict, it will be upheld whether or not it receives the approval of the trial judge. The test is the same in either case. We thus look to the evidence to determine whether there is any credible evidence to support the jury's verdict.

The appellants' theory of the case is predicated upon their assumption stated in their brief that:

"Mr. Panek's vision was obscured suddenly and without warning and the extent of the limitation of vision

was not at all apparently until he started into the blowing snow and at which time he immediately took every possible action to reduce his speed and stop."

Were there any credible evidence to support this assumption, the appellants' position would be arguably meritorious. A careful perusal of the record reveals no such evidence. True, Mrs. Panek testified:

"Well, there it just blinded you like, you know, like it was instant, just like an instant cup of coffee. Just mix it up real fast and that is how this thing was. It just hit you."

This answer, however, was in response to counsel's question, "What was the visibility in the area where the accident took place?" There was no dispute that visibility was very limited. All of the witnesses testified that, within the blowing area, visibility was very bad. State Trooper Kinsman's report said it was almost "nil."

It is obvious that the defendant seeks to rely upon the emergency doctrine that the impact of the snowy area was unexpected and instantaneous and he was thereby confronted with an emergency which should exonerate him from the consequences of his conduct. We have, however, frequently stated that:

". . . the party seeking the benefits of the emergency doctrine must be free from negligence which contributed to the creation of the emergency." *Geis v. Hirth* (1966), 32 Wis. 2d 580, 586, 146 N. W. 2d 459. *See also Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 151 N. W. 2d 741; *Schmit v. Sekach* (1966), 29 Wis. 2d 281, 139 N. W. 2d 88.

Accordingly, in the event that it is apparent from the facts that a party is negligent as a matter of law and that such negligence contributed to the emergency, that party is not shielded by the emergency doctrine. In the instant case we are satisfied that if an emergency existed, as indicated by the testimony of Lily Panek, it

is apparent that it was Panek's negligence that created the emergency.

As set forth in the statement of facts, Panek saw the area of heavily blowing snow from the crest of the hill to the east. Kinsman testified without contradiction that the blowing area extended two-tenths of a mile to the east of the site of the accident. The uncontradicted evidence shows that the distance from Panek's. point on the top of that hill to the area of the blowing snow was at a minimum of 780 feet and at that point Panek admitted that he was not able to see through the blowing area. He nevertheless proceeded to the area where the snow interfered with his visibility.

As stated by the trial judge, even though Panek admitted that his visibility was obscured to such an extent that he could not see beyond 40 feet, he proceeded in the whirling snow at a speed of 25 to 30 miles per hour for two-tenths of a mile until the point of impact. He admitted that he knew from his experience with snow drifting on the road to the east of the accident site, that visibility would be impaired and that the highway within the area of the blowing snow would be slippery. He nevertheless elected to proceed in the face of these known hazards. Under these circumstances we deem this case to be covered by the rule of *Lauson v. Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629, which has more recently been restated in *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. 2d 180, 83 N. W. 2d 759; *Barker Barrel Co. v. Fisher* (1960), 10 Wis. 2d 197, 200, 102 N. W. 2d 107; *Bailey v. Hagen* (1964), 25 Wis. 2d 386, 130 N. W. 2d 773. In each of these cases we held that, where there was poor visibility, it was negligence on the part of the driver of an automobile to proceed at a speed at which he cannot stop his vehicle in the distance which he can see ahead.

In the instant case, even after Panek was aware of the reduced visibility, he continued to travel at a rate of 25 to 30 miles an hour when, as he acknowledged, he

knew he could not stop. Under these circumstances and in the absence of any credible evidence of contrary facts that would support the jury's verdict, we agree with the trial judge's decision that the defendant was negligent as to speed as a matter of law. The judge properly changed the answer to the question in regard to the negligence of Panek from "No" to "Yes."

Nor do we see any need for a further trial on the question of whether such negligence was causal. The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result. *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 628, 629, 139 N. W. 2d 595. It is apparent from the record that no jury question is presented in regard to this portion of the verdict. "Reasonable men could not differ as to whether the defendant's conduct was, or was not, a substantial factor in producing the result." Prosser, *Law of Torts* (2d ed.), page 281, sec. 50.

Appellants also contend that if the trial judge's finding of negligence as to Panek is upheld, appellants should have a further opportunity of proving Kinsman's negligence. The defendants, however, failed to move the court on motions after verdict for a change in the jury's determination that Kinsman was free of negligence. Under the rule of *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380, the defendants are not entitled to have reconsidered, as a matter of right, matters that were not brought to the attention of the trial court. While it would be within the discretion of this court under sec. 251.09, Stats., to grant a new trial in regard to proportion of negligence or the question of causation, there must be a showing that there has been a probable miscarriage of justice. We are satisfied, viewing the case as a whole, that justice is served by sustaining the trial court's determination to set aside the verdict.

*By the Court.*—Judgment affirmed.