Andrew L. JOHNSON, Plaintiff-Respondent,

v.

David A. NEUVILLE, d/b/a 4 Sail Realty, and AAI Syndicate #1, Ltd., Defendants-Appellants.

Court of Appeals

*No. 98–1680. Oral argument March 12, 1999.—Decided April 13, 1999.*

(Also reported in 595 N.W.2d 100.)

366

On behalf of the defendants-appellants, there were briefs and oral argument by *Stephen L. Fox* of *Schmidt & Rupke, S.C.*, Brookfield.

On behalf of the plaintiff-respondent, there was a brief and oral argument by *David L. Weber* of *Pinkert, Smith, Weir, Jinkins, Nesbitt, Hauser & Weber*, Sturgeon Bay.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J.   This appeal involves the application of § 452.133(1)(b), STATS., which imposes duties on a real estate broker to all parties involved in a real estate transaction. David A. Neuville, d/b/a 4 Sail Realty, appeals a judgment entered after a jury found him negligent in providing real estate brokerage services to Andrew Johnson, who purchased a commercial property from Neuville's client. Neuville argues that a different statute, § 452.23(2)(b), STATS., operates to relieve him from his obligations under § 452.133(1)(b), and therefore the trial court erred when it refused to grant judgment notwithstanding the verdict (JNOV) in his favor. Neuville also contends the trial court erred by refusing to change the jury's answer to the causa-

tion question on the special verdict. Neuville maintains the evidence was insufficient to sustain a finding that his negligence caused Johnson's damages. We reject his arguments and affirm the judgment.

### BACKGROUND

Andrew Johnson operates a business known as "Andy's Fish Market" in Sturgeon Bay, Wisconsin. Because Johnson needed to relocate his business, he became interested in property Lawrence and Mary Tanck owned. Neuville, a local real estate broker, listed the Tancks' property for sale and acted as their sales agent.

Sometime in early 1996, Johnson contacted Neuville to arrange a showing of the Tanck property. Johnson testified that at the second showing, Neuville told him there was a twenty-foot easement on the other side of the fence from the Tancks' parking lot and that there was an access easement to Lansing Avenue. In contrast, Neuville testified that he told Johnson that there was an easement out the back of the property for access and that he *believed* it ran over to Lansing Avenue. The alleged access easement supposedly ran behind a Chinese restaurant known as the "Mandarin Garden."

It is undisputed, however, that there is no access easement from the Tanck property, now Andy's Fish Market, to Lansing Avenue. There are, however, mutual easements between Andy's Fish Market and the Mandarin Garden permitting parking and access between those businesses.

On April 8, 1996, Johnson signed an offer to purchase, which Neuville prepared. Johnson testified that Neuville also presented him with an agency disclosure form indicating that Neuville represented the

Tancks in the transaction. After further negotiations, the Tancks accepted Johnson's offer, and a closing was scheduled for May 15. Between the acceptance of the offer to purchase and the closing, Johnson decided that he needed to construct an addition for a freezer. He hired Baudhuin, Inc., a local surveyor, to prepare a site plan to make sure he had enough property.[1]

Baudhuin prepared two site plans, both dated May 6. Baudhuin testified that the first site plan was prepared to show the distance from the addition to the lot line. The second site plan was prepared to show the rear yard setback to the proposed addition and an existing wooden fence. The second site plan also showed the twenty-foot parking easement behind the property line, but not the twenty-foot parking easement on Johnson's property. Baudhuin testified that Johnson asked him to show the easement that was reflected on a previous survey of the restaurant next door. He also testified that as to the site plans prepared, Johnson never asked about an easement to Lansing Avenue. After examining the site plans, Johnson determined that he would need to obtain some additional property from his neighbor so that the addition would fit on the property.

During this time, Neuville obtained the site plan showing the proposed addition and was asked to negotiate a land swap of two triangular pieces of land to accommodate the construction of the addition. Neuville

---

[1] Baudhuin testified that a site plan is a drawing, commonly prepared for builders, which identifies features on a property like fences, parking or buildings. He also testified that the absence of an easement on a site plan would not necessarily mean that the easement does not exist. Its appearance would depend on the specific purpose for which the site plan was prepared.

arranged to have a certified survey map prepared to reflect this land swap because the swap altered the eastern boundary of Johnson's property.[2] The certified survey map did not reflect any easements on the property. Baudhuin testified that it is a legal requirement to show easements on a certified survey map if they are recorded and if they serve the property.[3] The certified survey map was dated May 10. Subsequently, Neuville asked an attorney to prepare quitclaim deeds to reflect the boundary changes. The deeds were recorded May 14, the day before the closing.

Neuville arrived late to the May 15 closing because he was getting the title commitment and warranty deed. The title commitment was not provided until the morning of the closing. Neuville reviewed the closing documents and noticed that the warranty deed, which also contained the certified survey map, contained no language about easements. He attempted but was unable to reach the attorney who prepared the documents to inquire about the absence of the easement language on the deed.

Johnson testified that Neuville then told him there was a problem with the easement. Neuville testified that during the closing he did not differentiate in his mind between the twenty-foot easements and the access easement to Lansing Avenue, that he did not learn there was no easement to Lansing Avenue until

---

[2] Baudhuin testified that unlike a site plan, a certified survey map is a map of the property showing the government surveyed property corners if they are found or set. It is used to create new parcels of land. If easements are found, the certified survey map would also show them.

[3] Section 236.34(1)(c), STATS., states that the map shall be prepared in accordance with § 236.20(2)(c) and (f), STATS., which identify easements.

sometime after the closing, and that he believed the access easement to Lansing Avenue existed on the day of closing.

Neuville also testified he knew there was an easement in the back of the property because he had sold the property to the Tancks and had seen previous deeds to the property that contained easement language. He further testified that the reason he believed an access easement existed was that, from his office across the street from the Tanck property, he personally observed vehicles traveling from Lansing Avenue in the location of the purported easement. He testified the reason he felt compelled to say something about an easement was because there was "a hole" in the wood fence, which he felt indicated a method or right to go out through the back of the property.

Further, Neuville testified that there was some discussion at the closing about whether easement language could be added in the form of a correction deed, which would encompass the twenty-foot easement behind Johnson's property and *may* have encompassed access to Lansing Avenue. Johnson testified that despite the absence of easement language in the closing documents, he proceeded to close because Neuville had told him the easement existed and he trusted Neuville.

When leaving the closing, Johnson asked Tanck if he had an easement out to Lansing Avenue. Tanck told him he had a twenty-foot easement behind the property but not access to Lansing Avenue. Johnson testified that shortly after the closing, Neuville arrived at Andy's Fish Market and told Johnson that there was no easement to Lansing Avenue. Johnson also testified that had he known the access easement did not exist, he would have proceeded with the sale but would have

attempted to negotiate a lower price because he believed the property without the easement had a diminished value equal to the cost of purchasing the easement.

Johnson filed suit alleging misrepresentation and negligence. A jury concluded that Neuville made no misrepresentations, but found him negligent in providing brokerage services to Johnson, apportioning 65% negligence to Neuville and 35% negligence to Johnson. In a post-verdict motion, Neuville sought a JNOV claiming that § 452.23(2)(b), STATS., relieved him from liability because of the existence of third-party reports which disclosed the nonexistence of the access easement. Neuville also sought to change the jury's answer on the special verdict's causation question, claiming there was insufficient evidence adduced at trial to establish causal negligence. The trial court denied Neuville's motion, and this appeal ensued.

## ANALYSIS

### 1. Judgment Notwithstanding the Verdict

Neuville contends that the trial court erred by denying his motion for JNOV because § 452.23(2)(b), STATS., relieves him from liability as a matter of law. Neuville claims that under § 452.23(2)(b), he was not required to disclose the nonexistence of the alleged Lansing Avenue access easement at any time during the course of this real estate transaction because of qualified third-party reports that disclosed information about the existence of easements. We reject Neuville's argument because Johnson's negligence claim asserts, and the record supports, a separate basis for liability.

We review a trial court's denial of a motion for JNOV de novo, applying the same standards as the trial court. *In re Lily R.A.P.*, 210 Wis. 2d 132, 140, 565 N.W.2d 179, 183 (Ct. App. 1997). A motion for JNOV may be granted when evidence supports the verdict but other reasons evident in the record justify judgment for the moving party. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 120 Wis. 2d 591, 599–600, 357 N.W.2d 287, 292 (1985), *rev'd on other grounds*, 127 Wis. 2d 127, 377 N.W.2d 605 (1985) (citing § 805.14(5)(b), STATS.). A motion for JNOV does not challenge the sufficiency of the evidence to support the verdict. *Id.* at 600, 357 N.W.2d at 292. It admits the facts found but contends that judgment should be granted to the moving party on grounds other than those the jury decided. *Id.* Whether § 452.23(2)(b), STATS., relieves Neuville from liability involves applying particular facts to a statute, which is a question of law we review de novo. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

We have held that the protections accorded by § 452.23(2)(b), STATS., do not preclude a broker's liability for the breach of other duties. *Conell v. Coldwell Banker Premier Real Estate, Inc.*, 181 Wis. 2d 894, 901, 512 N.W.2d 239, 242–43 (Ct. App. 1994). Johnson maintains that his negligence claim asserts a separate basis for liability. Johnson claims that Neuville failed to diligently exercise reasonable skill and care in providing brokerage services to Johnson pursuant to § 452.133(1)(b), STATS.

Section 452.133(1)(b), STATS., states:

(1) DUTIES TO ALL PARTIES TO A TRANSACTION. In providing brokerage services to a party to a

transaction, a broker shall do all of the following:

. . . .

(b)   Diligently exercise reasonable skill and care in providing brokerage services to all parties.

The gravamen of Johnson's claim is that Neuville, having expressed an opinion concerning a material characteristic of the property, failed to subsequently structure the real estate transaction so that Johnson was alerted to or enabled to ascertain the accuracy of Neuville's opinion. Neuville expressed an opinion that an access easement to Lansing Avenue existed. In the face of information that should have alerted Neuville to question its existence, however, he did nothing, either before the offer to purchase or the closing, to verify the easement's existence. Further, Neuville proceeded to close the transaction in such a way as to limit Johnson's ability to independently determine that the easement did not exist.

The evidence adduced at trial reveals that Neuville's opinion was based solely upon his personal observations of traffic behind the property, his recollection of prior sale documents of the Tanck property, and his own inferences derived from the manner in which the fence behind the property was constructed. Additionally, a jury could reasonably infer from the evidence that Neuville knew the access easement was important to Johnson's business.[4] Nevertheless, despite knowing that his opinion was grounded only on

[4] For example, Johnson testified that Neuville volunteered the information concerning the alleged access easement. The jury could infer that Neuville would have no reason to so inform Johnson unless he believed it material to Johnson's decision to purchase the property.

374

inferences and that it concerned a material condition of the property, Neuville did nothing to verify the easement's existence before completing the offer to purchase. Nor did he take measures which would have enabled Johnson to do so by including, for example, a contingency in the offer to purchase requiring documentation of the access easement.

■

Likewise, before the closing, Neuville was confronted with documents showing no access easement to Lansing Avenue. Nonetheless, he failed to note that there was a discrepancy between his opinion and the documents. For example, before the closing, Neuville possessed at least one third-party report which was required to disclose the existence of easements, the certified survey map. Although the map did not disclose the access easement, Neuville continued to believe the easement existed. Neuville had the opportunity to identify a discrepancy between his "belief" and the conflicting information disclosed on the report. Yet, even in the face of contrary reports in his possession, Neuville did nothing more to satisfy himself that his belief was correct. He also did not alert Johnson that Johnson might need to further investigate the true state of title. A jury could reasonably infer from this evidence that Neuville either read the certified survey map, realized no easement existed and did nothing to alert Johnson to verify his opinion's accuracy, or that he read the reports and failed to discern the discrepancy, thus precluding Johnson an opportunity to independently ascertain the accuracy of Neuville's opinion. We conclude Johnson's negligence claim asserts a separate basis for liability under § 452.133(1)(b), STATS., which the record supports.

375

We also reject Neuville's argument, however, because the plain language of 452.23(2)(b), STATS., does not apply to this case. Section 452.23(2)(b) provides:

**(2)**     A broker or salesperson is *not required to disclose* any of the following to any person in connection with the sale, exchange, purchase or rental of real property:

(b)     Except as provided in sub. (3), information relating to the physical condition of the property or any other information relating to the real estate transaction, if a written report that discloses the information has been prepared by a qualified 3rd party and provided to the person. In this paragraph, "qualified 3rd party" means a federal, state or local governmental agency, or any person whom the broker, salesperson or a party to the real estate transaction reasonably believes has the expertise necessary to meet the industry standards of practice for the type of inspection or investigation that that has been conducted by the 3rd party in order to prepare the written report. (Emphasis added.)

We have held that § 452.23(2)(b), STATS., is straightforward in that it relieves a broker from the duty to disclose information related to the property's physical condition where an inspection is conducted by a qualified third-party who prepares a report. *Conell,* 181 Wis. 2d at 900, 512 N.W.2d at 242. We further held that § 452.23(2)(b) only affects the broker's duties to inspect and to disclose information related to the property's physical condition or other information relating to the real estate transaction. *Id.*

Neuville's argument, in essence, is that his failure to disclose the result of his own negligence falls within the scope of § 452.23(2)(b), STATS. We conclude such conduct falls outside the protections this statute accords and contemplates. The statute's plain language relieves a broker from the obligation of disclosing information about a physical condition of the property or any other information relating to the real estate transaction when a third-party report discloses that information. The statute does not, however, apply to separate acts of negligence. In this instance, Johnson's claim and the record reflect a separate affirmative act of negligence. Because the protections afforded by § 452.23(2)(b) do not preclude a broker's liability for breach of other duties, Neuville's argument fails.

In summary, we conclude that the record supports Johnson's negligence claim for failure to use reasonable skill and care in providing real estate brokerage services. See § 452.133(1)(b), STATS. We further conclude that the plain language of § 452.23(2)(b), STATS., does not relieve Neuville from liability. Because we reject the application of § 452.23(2)(b) as a defense in this case, we affirm the trial court's refusal to grant JNOV.

2. Sufficiency of Evidence to Sustain Causation Question in Special Verdict.

As a preliminary matter, we observe that at oral argument, Neuville specifically waived any claim that the evidence failed to support the jury's determination of the existence of damages or the amount thereof. Neuville has therefore also waived any claim that the amount of damages awarded was erroneously calcu-

lated. He has limited his argument to challenging whether the evidence supports the jury's conclusion that his conduct caused Johnson any damage. We therefore confine our analysis to Neuville's challenge to the jury's finding of causation.

A motion to change a jury's verdict answer challenges the sufficiency of the evidence to sustain the answer. Section 805.14(5)(c), STATS.[5] A reviewing court will not upset a verdict if any credible evidence supports it. *Ferraro v. Koelsch*, 119 Wis. 2d 407, 410, 350 N.W.2d 735, 737 (Ct. App. 1984). The evidence must under any reasonable view support the verdict and remove the question from the realm of conjecture. *Gonzalez v. City of Franklin*, 128 Wis. 2d 485, 494, 383 N.W.2d 907, 911 (Ct. App. 1986). We look for credible evidence to sustain a jury's verdict, *Ferraro*, 119 Wis. 2d at 410–11, 350 N.W.2d at 737, and the credibility of witnesses and the weight afforded their individual testimony is left to the jury. *Radford v. J.J.B. Enters.*, 163 Wis. 2d 534, 543, 472 N.W.2d 790, 794 (Ct. App. 1991). In addition, even if more than one reasonable inference may be drawn from the evidence, we must accept the inference the jury draws. *Ferraro*, 119 Wis. 2d at 410–11, 350 N.W.2d at 737.

Neuville contends that the evidence adduced at trial was insufficient to support a finding of causation. The causation test is whether the defendant's negligence was a substantial factor in contributing to the result. *Kinsman v. Panek*, 40 Wis. 2d 408, 417, 162 N.W.2d 27, 31 (1968). Causation is a question of fact,

---

[5] Section 805.14(5)(c), STATS., provides: " *Motion to change answer.* Any party may move the court to change an answer in the verdict on the ground of insufficiency of the evidence to sustain the answer."

and whether causation exists is frequently an inference the trier of fact draws from the circumstances. *Jagmin v. Simonds Abrasive Co.*, 61 Wis. 2d 60, 82, 211 N.W.2d 810, 822 (1973).

■

We conclude that the trial court properly denied Neuville's motion to change the answer to the causation question in the special verdict. Considering the evidence and the inferences drawn therefrom in the light most favorable to the verdict, there is credible evidence in the record to support the jury's determination. *Millonig v. Bakken*, 112 Wis. 2d 445, 450, 334 N.W.2d 80, 83 (1983). Johnson testified that he thought he was purchasing property with an access easement to Lansing Avenue and that he believed the price he paid reflected the value of the property with an easement. Johnson further testified that he did not learn the access easement did not exist until after the closing. Neuville testified he also did not learn the access easement did not exist until after the closing. As a result, Neuville's negligent conduct caused Johnson to acquire property which was different from what he believed he was purchasing. We conclude the evidence and inferences permissibly drawn therefrom support the jury's finding that Neuville's negligence was a substantial factor in causing some damage to Johnson. *See Kinsman*, 40 Wis. 2d at 417, 162 N.W.2d at 31. Because the record contains sufficient evidence to support the jury's verdict on the question of causation, we affirm.[6]

---

[6] In his brief, Johnson asked that we order a new trial in the event we reverse based on Neuville's arguments. Because we affirm the trial court's judgment, we need not address Johnson's argument.